### Smith v. Chapman, et al.

(Decided October 20, 1914.)

Appeal from Pike Circuit Court.

1. Assignment—Judgment—Interest in Subject Matter—Parties.— Where the assignee of plaintiffs' judgment on the first trial of an action is made a party to the action on the second trial, plaintiffs will be permitted to prosecute the action jointly with their assignee.

2. Trespass to Try Title—Deed—Conflicting Evidence.—Where in an action of trespass to try title, plaintiffs introduce a title bond and deed, and the evidence is conflicting, it cannot be said as a matter of law that the title bond and deed do not cover the land in dispute.

3. Adverse Possession—Possession of Interference.—The actual occupancy of a junior title holder of that part of a tract of land which does not interfere with the elder grant does not give any possession to the part within the interference, although the elder patentee never actually entered upon any part of the land included in his patent.

4. Adverse Possession—Continuous.—To constitute adverse possession, the possession must not only be open, notorious, adverse and peaceable, but it must be continuous.

5. Adverse Possession—Acts of Trespass.—Mere acts of trespass such as cutting timber from land or taking coal therefrom are not sufficient to constitute adverse possession; nor will the planting of two or three crops of tobacco or potatoes or beans or corn during a period of 20 years constitute such possession.

6. Trespass to Try Title—Conflict of Evidence—Peremptory.— Where in an action of trespass to try title plaintiff's own evidence fails to show a continuous possession of the land, and the

question is one of conflict of evidence, held, that a peremptory instruction should have been given in favor of defendants.

7. **Adverse Possession—Action for Timber Taken From Land.—Period of Possession—Instructions.—**Where plaintiff sues to recover the value of timber taken from land to which he claims title by adverse possession, the instructions should require the jury to believe that plaintiff had been in possession of the land for 15 years prior to the time the trespasses were committed, in order to authorize a finding in favor of plaintiff.

HOBSON & HOBSON, STRATTON & STEPHENSON and GEORGE PINSON, JR. for appellant.

ROSCOE VANOVER, WILLIS STATON and F. W. STOWERS for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

In this action of trespass to try title against the defendant, Will M. Smith, plaintiffs, Johnson Chapman and Rebecca Chapman, his wife, recovered a verdict and judgment for $700. Defendant appeals.

There have been two trials of the case. On the first trial plaintiffs recovered a verdict and judgment for $650. During the progress of the action certain heirs of Hammond Goosling were made parties. On appeal to this court the judgment was affirmed. Goosling, et al. v. Chapman, et al., 147 Ky., 491, 144 S. W., 380. Subsequently, defendant Smith brought an action for a new trial on the ground of newly discovered evidence. The trial court sustained a demurrer to his petition. On appeal to this court the judgment was reversed. Smith v. Chapman, 153 Ky., 70. Thereafter an agreed order was entered in this case setting aside the first judgment in favor of plaintiffs. Thereupon a second trial was had in which plaintiffs, as before stated, recovered a verdict and judgment for $700.

The tract of land in controversy is located on the Road Fork of Pond Creek in Pike County, and is a portion of the 86 acre tract of land patented to Hammond Goosling in 1856. According to the evidence for plaintiffs, Betsy Ann McCoy settled on the Hammond Goosling patent some time during the Civil War, under a verbal land-swap by which she exchanged other lands for those embraced in that patent. Some years ago she put plaintiffs in possession of the lower end of the claim, and in 1903 gave them a title bond, agreeing to convey

the land. During the same year she executed a deed. After taking possession of the land plaintiffs claimed that they held adversely for a period of 15 years.

According to the evidence for defendants, Hammond Goosling, after obtaining his patent in 1856, sold and conveyed the lower end of the survey to Ben Williamson in 1858. Ben Williamson sold this part of the Goosling survey, together with the adjoining lands, to Wallace J. Williamson Wallace J. Williamson sold the whole tract to Jacob Smith, who upon his death devised it to his son, the defendant, Will M. Smith. The tract of land in dispute is embraced within each of these deeds and patents.

(1) It is first contended that plaintiffs show no interest in the subject matter of the litigation. This contention is based on the fact that plaintiffs assigned their original judgment to F. W. Stowers, and plaintiff, Johnson Chapman, admitted in his deposition that he had no further interest in the recovery. In the first place it does not appear that plaintiffs assigned their right of action, but only the judgment they recovered on the first trial; but even if his admission be sufficient to show no interest in the subject matter of the litigation, his assignee was made party to the action and the defendant was not prejudiced by the court permitting this to be done, or in permitting the action thereafter to be prosecuted in the joint names of plaintiffs and their assignee.

(2) It is next insisted that neither the title bond nor the deed executed to carry the title bond into effect covers the land in controversy. On this question the evidence conflicts. While it is true that the evidence greatly preponderates in favor of the defendant, yet in view of the conflict in the evidence we can not say as a matter of law that plaintiffs' title bond and deed do not cover the land in dispute.

(3) Defendant insists that plaintiffs failed to show any title to the land in question. It is admitted that they showed no title of record, so the question resolves itself into one of adverse possession. It is conclusively shown that defendant has a good title of record. The land in dispute is only a part of the land covered by plaintiffs' title bond and deed. Betsy Ann McCoy, through whom plaintiffs claim, never lived on the land in controversy, and never had possession of it in any other way. She merely asserted a claim to the Hammond Goosling patent. As she never entered the lap, or took possession of

it in any other way, it follows that her possession can not be tacked to that of plaintiffs. Plaintiffs' house is not located on the interference between their deeded land and that of defendant. Nor have plaintiffs ever had any tenants residing on the interference. It is the settled law of this state that the actual occupancy of a junior title holder of that part of a tract of land which does not interfere with the elder grant does not give any possession to the part within the interference, although the elder patentee never actually entered upon any part of the land included in his patent. Trimble v. Smith, 4 Bibb., 257; Smith v. Mitchell, 1 A. K. Mar., 207.

It follows, therefore, that plaintiffs' mere occupancy of the adjoining land did not of itself constitute actual adverse possession of the interference to which defendant has shown title deducible from the Commonwealth. It remains to be seen whether plaintiffs actually entered upon the interference and held it adversely for the statutory period. On this question Johnson Chapman, after saying that he had lived on his boundary for 22 years and claimed to the extent of it, testified as follows:

"Q. How many fields have you cleared on it? A. I had enough to put out my orchard and fence off my house. Q. Tell the jury whether or not you have any fenced—or field below the line or on the part Will Smith claims? A. Yes, sir; I have. Q. How long have you had that part of it cleared and fenced? A. Three years since August. Q. You mean on the part he claims, you have had it cleared three years? A. Yes, sir. Q. During the time you lived up there tell the jury whether or not you claimed the lower end of the Hammond Goosling patent? A. Yes, sir; I did, and used it for firewood. I would not clear any down there on account of destroying the timber. It is very close to the railroad and I would not clear the land and destroy the timber; so I cut some old hollow beeches and things off, and I would fence up that little boundary and tend it or something or other; and I tended it in tobacco when I first moved. Q. How many years ago did you tend it in tobacco? A. Well, when I first went there. Q. Now, the part you tended in tobacco some 20 years ago is on the part Will M. Smith now claims? A. Yes, sir."

Later on he states that he had been exercising control over the land and had used it as he pleased for 22 years. He then testified as follows:

· Q. To what uses have you used it? A. Used fire-wood; potato patches, tobacco and a little corn and beans; and coal banks; and cut timber off of it and hauled it to the mill and had it sawed; and cut timber off of it and hauled it to Bill Harris' mill when I first moved there.''

It is very evident from Johnson Chapman's statement that in many instances, in speaking of the land in controversy, he refers merely to his own deeded boundary, and not to the land in dispute, and he does not show with any reasonable certainty which of the acts that he relies on as constituting his adverse possession were exercised on the tract in controversy. Nor does Chapman show when he cultivated any of the land in controversy, with the possible exception of the tobacco patch, which he cultivated about 20 years before he testified. If he cultivated since that time it was within three or four years before he testified. Smith testified that the corn and beans were raised on the land in controversy in the last two years, and this statement is not denied. It will thus be seen that plaintiffs failed to show that any of the land in dispute was enclosed for the statutory period. They did not live on it or have any tenants living on it. They do not show that they cultivated the land for any particular period of time. Under our rule, the possession must not only be open, notorious, adverse and peaceable, but it must be continuous. We have frequently held that mere acts of trespass such as cutting timber from land or taking coal therefrom are not sufficient to constitute adverse possession. Nor will the planting of two or three crops of tobacco or potatoes or beans or corn during a period of 20 years constitute such possession. Courtney v. Ashcraft, 105 S. W., 106, 31 Ky. L. R., 1324; Degman v. Elliott, 8 S. W., 10; Porter v. Kennedy, 1 McMull (S. C.), 354; Barr v. Potter, 57 S. W., 478; Wilson v. Stivers, 4 Dana, 634. As this is not a case of mere conflict in the evidence, but one where plaintiffs' own evidence fails to show a continuous possession of the land, we conclude that the trial court erred in failing to give a peremptory instruction in favor of defendants.

Another error relied on is the failure of the trial court to require the jury to believe that plaintiffs had acquired title by adverse possession at the time it is alleged the defendant cut and removed the timber from the land. The suit was filed in 1908. It was based on

trespasses committed in the years 1906 and 1907. The instruction authorized a verdict for plaintiffs if they had been in adverse possession of the land 15 years at the time of the filing of the suit. In order for plaintiffs to recover, however, it was necessary for them to show title at the time the alleged trespasses were committed. Otherwise, they would be permitted to recover the value of the timber taken from land which they did not own.

We see no other errors in the instructions.

Judgment reversed and cause remanded for new trial consistent with this opinion.

Judge Hobson not sitting.