CASE 33.—ACTION BY THE WHITE HOUSE CANNEL COAL CO. AGAINST THE SANDY RIVER CANNEL COAL CO. FOR DAMAGES FOR REMOVING COAL FROM ITS LAND.—April 11.

# Sandy River Cannel Coal Co. v. White House Cannel Coal Co.

Appeal from Johnson Circuit Court.

A. J. KIRK, Circuit Judge.

Judgment for plantiff. Defendant appeals. Reversed.

1. Mines and Minerals—Removal—Conversion of Ore—Damages —Plaintiff and defendant were adjoining owners of coal

Sandy River Cannel Coal Co. v. White House Cannel Coal Co.

lands. Plaintiff insisted that defendant was extracting ore from plaintiff's land, and brought suit to restrain further mining and to establish the boundary. The only feasible way of taking coal from plaintiff's land was through the mine which defendant had opened, and pending the litigation, defendant being about to abandon its mine, it was agreed that defendant should take out the coal under plaintiff's land and give a bond to account therefor in case plaintiff succeeded. Held that, on the boundary being subsequently determined in accordance with plaintiff's contention, defendant, having removed the coal under a bona fide claim of right, was only liable to plaintiff for a reasonable royalty on the amount removed.

2. On Motion Relating to Taxation of Costs—Costs—Appeal—Record—Statutory Provisions—Unnecessary Matter.—Civil Code Prac. section 737, subsec. 11, provides that a party who requires a clerk to copy papers which do not constitute part of the record or immaterial parts of a record shall pay the resulting costs. Appellate court rule 7 (75 S. W. v.) provides that, where it is desired to have the record on a former appeal before the court on a second appeal, the old record may be placed with the new. Held that, where a party on the second appeal brought up an entire transcript of the record, including the transcript on the former appeal, the expense of copying the transcript on the former appeal can not be taxed as costs.

WALTER S. HARKINS, McQUOWN & BROWN, HAZELRIGG, CHENAULT & HAZELRIGG for Appellant.

The consideration of the authorities and the reasons therefor, together with the evidence in this case and the map filed with the transcript will be, we think, sufficient to sustain the propositions.

1st. That when the coal was mined, it was mined with the honest belief that the land belonged to the defendants, based upon the miniments of title which had been passed upon by reputable counsel, and declared sufficient to pass the estate therein.

2nd. That the quantity of coal mined and taken from the disputed land was 3942 4-5 tons of coal, of the value of $985.70, based upon the reckoning at 25c. per ton, a sum in view of the proof, largely in excess of the value of the coal, but which appellant is held to, since no exceptions was filed by it to the Commissioner's Report.

3rd. That the finding of the court in favor of the plaintiff for the sum of $4318.04 is flagrantly in excess of the value of the coal taken and the injury to the property that this case should be reversed, with instructions to the court below to enter judgment for the appellee for the sum of $985.70, with interest and cost and so believing this brief and list of authorities is respectfully submitted.

### AUTHORITIES CITED.

Winchester .v. Craig, 33 Mich., 205; 17' English Ruling Cases, 879; Forsyth v. Wells, 41 Pa. State 291, 80 Am. Dec., 617; Wood v. Mooreland, 3 Q. B., 440, note; 84 Am. Dec., 766; 90 Am. Dec., 266; 10 State 430; 16 State 196; Bainbridge on Mines and Minerals, 510; Greenfield Bank v. Leavitt, 17 Pick, 1, 28 Am. Dec., 268; Durant Mining Company v. Percy Con. Mining Co., 93 Fed., 166; United States v. Homestake Min. Co., 117 Fed., 481; Trustees of Dartmouth College v. Inter-National Paper Co., 132 Fed., 93; Hilton v. Woods, L. R., 4 Eq., 432; Livingston v. Rawyards, 5 A. C., 25; Coal Creek Min. & Manf. Co. v. Moses, 54 Am. Rep., 415.

HAGER & STEWART for Appellees.

### POINTS AND AUTHORITIES.

The appellee and cross-appellant maintains that the record establishes the following propositions:

1. That the appellant and cross-appellee mined and removed from the property in question eleven hundred and eighty (1180) tons of coal before the issual of the injunction; and as to this the measure of damage is stated in proposition No. III hereof.

2. That the appellant and cross-appellee mined and removed from the property in question eighty-nine hundred and thirty-eight (8938) tons of coal after the issual of the injunction; and as to this the measure of damage is as stated in proposition No. IV. hereof.

3. The taking and removal of the eleven hundred and eighty (1180) tons before the issual of the injunction was willful and intentional, and the measure of damages is the full market value of the coal taken as of the date it was converted, without any deduction for the labor bestowed or expenses incurred in removing it to the mouth of the entry or on board cars. (I. & St. L. R. Co. v. Ogle, 92 Ill., S. C., 25 Am. R., 342; Strubee v.

Trustees, &c., 78 Ky., 481; Royal Mining Co. v. Hurting, 37 Mich., 332; Powers v. Tillie, 87 Me., 34; 47 Am. St., 304; Miss. River Log Co. v. Page, 68 Minn., 269; 71 N. W., 4; Hoxsie v. Co., 41 Minn., 5481; 43 N. W., 476; U. S. v. Hometake Co., 117 Fed., 481).

4. The measure of damage for coal mined after the issual of the injunction, is the value of the coal at the mouth of the mine, less the expense of mining and of carrying it to that place. (Barringer and Adams the Law of Mines and Mining, pages 691 and 692; Sedgwick on Damages, 8 Ed., section 935; Sedgwick and Wait Trial Titles of Lands, 1st. Ed., 677, quoting Ege v. Kille, 84 Pa., St., 333; Hardy v. Young, 53 Pa. St., 176; Forsythe v. Wells, 41 Pa. St., 291; Coleman's Appeal, 62 Pa. St., 278 Barton Coal Co. v. Cox, 39 Md., 1; Sutherland on Damages, 1st. Ed., vol. 3, page 348; Kille v. Ege, 82 Pa., 102; Sutherland on Damages, vol. 1, pages 164-171; White on Mines and Mining Remedies, 568; Wilde v. Holt, 9 M. W., 672; Martin v. Porter, 5 M. W., 351; Morgan v. Powell, 2 Q. B., 278; Royal Mining Co. v. Hurting, 26 Am. R., 528; Illinois, &c., Co. v. Ogle, 82 Ill., 627, 25 Am. R., 342; Mayne on Damages, 290; George v. Vivian (reported in English Ruling Cases, vol. 17, 840, &c.) Jobe v. Potton; Woodenware Co. v. U. S., 106 U. S., 432; A stin v. Huntsville, &c. Co., 72 Mo., 535; 37 Am. R., 446; Blane Coal Co. v. McCulloch, 59 Md., 403; Cold Creek Coal Co. v. Moses, 15 Lea, 300; Ross v. Scott, 15 Lea, 479; Daugherty v. Chestnut, 2 Pickle, 1; Donovan v. Consolidated Ccal Co., 127 Ill., 28: S. C. 79 Am. St., 206; Durant Min. Co. v. Percy Consol. Min. Co., 93 Fed., 166; Trustees Darmouth College v. International Paper Co., 132 Fed., 92; Pine River Logging Co. v. U. S., 186 U. S., 279; Colorado v. Turcke, 70 Fed., 294; Sunnyside Coal & Coke Co. v. Reitz, 39 N. E., 541; Ellis v. Wire, 33 Ind., 127; Meriwether v. Bell, &c., 22 Ky. Law Rep., 844; Patterson v. Waldman, 20 Ky. Law Rep., 514; Hail v. Reed, 15 B. M., 479.)

5. Allowance of interest from the date of actual conversion, is proper: (Sutherland, vol. 1, page 174; Leonard v. Whittaker, 3 Bibb., 92; Saunders v. Vance, 7 T. B. Mon. 209; Levi v. Stallard, 6 Ky. Law Rep., 656; White Sewing Machine Co. v. Conner, 111 Ky., 827; Ohio Revised Statutes, section 4982; White Mines and Mining Remedies, section 570).

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

The Sandy River Cannel Coal Company and the White House Cannel Coal Company own adjoining coal lands, and a dispute arose between them as to the location of the dividing line. In October, 1889, the White House Cannel Coal Company brought suit against the Sandy River Cannel Coal Company, charging that it had entered upon and removed the coal from a part of its land. An injunction was granted restraining further removal of coal. The plaintiff sought to have this injunction perpetuated and to recover for the value of the coal taken. The defendant filed an answer, denying the allegations of the petition, and insisting that the land on which it had entered belonged to it. On final hearing the circuit court established the line as claimed by the plaintiff. The defendant appealed to this court, where the judgment was affirmed. See Sandy River Cannel Coal Company v. White House Cannel Coal Company, 72 S. W. 298, 24 Ky. Law Rep. 1653. After the determination of the case in this court the circuit court proceeded to ascertain the quantity of coal taken by the defendant from the plaintiff's land and to fix the value of it. Before the injunction was granted the defendant had taken out 1,180 tons of coal over the line which was established by the court as the dividing line. After the suit was brought, and the injunction was obtained, no further coal was taken out by the defendant until the year 1895, when, the action being still undetermined, the parties were confronted with this situation: The defendant was about to quit its mine. If it did not take the coal

out then, it could not do so at all, and, if the coal was not taken out before the mine was abandoned, it would be in a great measure lost. Therefore, to prevent injury to both the parties, an agreed order was entered by which the injunction was modified so as to allow the defendant to mine and remove the coal in controversy on the following conditions: "But this order is not to become operative unless within thirty days from this date said defendant enters into a bond to said plaintiff in the sum of ten thousand ($10,000.00) dollars with sureties to be approved by plaintiff, its attorneys, or Jay H. Northup, conditioned that said defendant shall pay to the plaintiff, its successors or assigns such an amount as may be adjudged against the defendant, said Sandy River Coal Company, its successors or assigns, for such coal as may be taken, removed or mined by said Sandy River Cannel Coal Company, its successors or assigns, during the existence of said modified order of injunction, as may be adjudged to belong to said White House Cannel Coal Company from or under said land in said order described, the value of said coal to be determined by the laws of the State of Kentucky as though a suit for an injunction restraining the mining and removing of said coal were pending but no order of temporary injunction or restraining order were asked for or issued." The defendant then went on and took out the remainder of the coal; but as to how much of it there was the proof is very conflicting. The plaintiff showed that the coal was taken in all from 3 56-100 acres of its land; that the vein of coal was 20 inches thick, and that 3 56-100 acres, if the coal was 20 inches thick, would produce, in round numbers, about 10,000 tons of coal. The plaintiff also proved that the defendant took out in

all the coal from under 20 acres of land; that the total tonnage showed an average of about 2,900 tons to the acre, or a thickness of vein of about 20 inches. On the other hand, the defendant showed that the coal in contest as it went back from the line grad-ually got thinner until it gave out; that the cannel coal here was not near 20 inches thick after it was stripped of all the scab and other substances; and that it was in pockets. The proof for the defendant is to the effect that the vein of cannel coal was not over 12 inches thick on the 3·56-100 acres. The defendant also showed by its agent whose duty it was to keep the weights that there were taken out after the injunction was modified 3,942 4-5 tons of coal. The master commissioner to whom the case was referred to report held that this was the best evidence as to the quantity of coal taken, but the circuit court, on exceptions to his report, held that there were taken out in the year 1896, 3,026 tons. He then added to this the account kept by the person who made the weights, which showed that there was taken out in 1895, 1,869 35-100 tons, making the total amount taken out after the injunction was modified 4,995 35 100 tons in place of 3,942 4-5 tons, as shown by the agent who kept the weights. While the statement showing the quantity taken out in 1896 to be 3,026 tons was filed by the defendant, it also appeared that it was made in Chicago by a person who knew nothing about the facts, and there is nothing in the record to show that the statement is correct. On the whole record, in view of all the proof, we concur in the conclusion of the master commissioner that the evidence of the person who weighed the coal is the best evidence in the record as to the quantity of coal taken out. It remains to determine upon what basis the value of

this coal shall be fixed. The plaintiff insists that it is entitled to the value of the coal after it was removed from the mine, which would be about $2.50 a ton. The circuit court allowed the defendant credit for what it cost it to get out the coal, and then charged it with what it got for it; thus leaving a balance of 44 cents a ton. Neither party being satisfied with the judgment of the court, both are complaining on the appeal before us.

Where the trespass is willful, and not the result of an honest mistake, the rule claimed by the plaintiffs applied. But the entire current of the later authorities is against applying it in cases like that before us. In 20 Am. & Eng. Ency. of Law, 792, the rule is thus stated: ''It is the prevailing rule that in an action for unlawfully working a mine and extracting coal or ore therefrom, if the taking was not a willful trespass, but was the result of an honest mistake as to the true ownership of the mine, the measure of damages is the value of the coal or ore as it was in the mine before it was disturbed.'' The rule is thus stated in 3 Sedgwick on Damages, sec. 935: ''Where coal, ore, or other valuable mineral is wrongfully, but in good faith, mined from plaintiff's land, the measure of damages is generally and properly held to be the value of the coal or ore taken as it lay in the mine.'' In Barringer & Adams on Mines, 691, after a similar statement of the rule, it is said: ''This valuation may also be expressed as the usual royalty paid for the right of mining.'' See, also, Keys v. Coal Company, 58 Ohio St. 246, 50 N. E. 911, 41 L. R. A. 681, 65 Am. St. Rep. 754; Bailey v. Railroad Company, 3 S. D. 531, 54 N. W. 596, 19 L. R. A. 653; Woodenware Company v. United States, 106 U. S. 432, 27 L. Ed. 230; Benson Mining

Company v. Alta Mining Company, 145 U. S. 428, 12 Sup. Ct. 877, 36 L. Ed. 762.

While there is some conflict of authority on the subject, the cases holding to the rule insisted upon for the plaintiff ignore the principle that damages in cases of innocent mistake must be confined to compensation for the injury done. In the case at bar the plaintiff had 3.56 acres of cannel coal land. The only feasible way that this coal could be gotten out, according to the proof, was through the mine which the defendant had opened. The defendant took the 3,942 4-5 tons of coal under an honest claim of ownership while the parties were disputing over the title, and it was allowed by the plaintiff to take it out under an agreed order to prevent a loss from falling on both the parties, as would have happened if the coal had been left in the mine and allowed to go to waste while they were disputing over the title. The 1,180 tons were taken out under a state of facts practically as strong for the defendant. Under such circumstances all that the plaintiff can fairly ask is that it shall be made whole. It cannot ask that it shall be enriched at the cost of the defendant or that more than a fair and reasonable compensation shall be paid it for what it has lost, the 3.56 acres of cannel coal land.

The proof shows that a reasonable royalty on bituminous coal is 7 cents and on cannel coal 25 cents. Under the proof a fair royalty on this coal would be 25 cents a ton. Judgments should therefore be entered in favor of the plaintiff for $295, with interest from January 1, 1891, as fixed by the circuit court for the 1,180 tons of coal taken out before the injunction was modified; also for the further sum of $985.70, with interest from October 1, 1896, for the

coal taken out after the injunction was modified. Considering the way the property was situated and all the facts, we are satisfied that this will fully compensate the plaintiff for all it has lost.

Judgment reversed, and cause remanded for a judgment as above indicated.

On motion relating to taxation of costs—May 24, 1907:

HOBSON, Judge.

On the second appeal of this case the appellant brought up an entire transcript of the record; thus including in it 200 and more pages which were included in the transcript on the former appeal. Appellee has entered a motion that so much of the cost of the transcript as is due to the copying of these 200 odd pages be not taxed as cost. Under the rules of this court the record on the former appeal might have been used on the second appeal. All that was necessary was that the old record should be placed with the new. Rule 7. It was therefore necessary only to copy on the second appeal the proceedings in the circuit court after the first appeal and to place the old record with the new. Subsection 11 of section 737 of the Civil Code of Practice is as follows: "A clerk who copies papers which do not constitute part of a record, unless required to do so by a judge or a party; and a party who requires a clerk to copy such papers, or immaterial parts of a record, shall pay the costs resulting therefrom, to be adjudged by the court of appeals upon or without motion." As it was unnecessary to copy the record already in this court, the motion of appellee is sustained, and so

much of the cost of the transcript as represents this part of the record will not be taxed as cost.

Motion sustained.