## Asher v. Gibson, et al.

(Decided March 16, 1923.)

# Appeal from Bell Circuit Court.

1. Mines and Minerals—Petition Held to Allege Ownership of Coal by Plaintiffs.—A petition alleging that defendants had begun to remove coal from a mine which was part of the coal reserved, and not sold or conveyed by plaintiffs, and which the plaintiffs owned under legal title, and of which they had at all times had actual possession, specifically alleges ownership and possession of the minerals.

2. Judgment—Withdrawal of Defense that Plaintiffs Did Not Own Entire Interest Warrants Judgment for Entire Interest.—Where defendant had withdrawn an answer alleging as a pro tanto defense that the two plaintiffs were not the only heirs of the ancestor under whom they claimed, without reiterating that allegation in the amended answer, the court, on finding for plaintiffs, properly adjudged them to be the owners of the entire interest in the coal involved, since there was no issue limiting their interest.

3. Mines and Minerals—May be Separated from Surface by Reservation.—A separation of the minerals in land from the surface and the corresponding creation of two distinct estates in the two classes of property may be effected by a reservation in a deed conveying the surface as completely as by a separate and distinct deed to the minerals.

4. Adverse Possession—Must be Uninterrupted.—The adverse holding must be continuous and uninterrupted for the statutory period, and later adverse possession cannot be tacked on to a prior one, where there was an intervening period in which the possession was interrupted.

5. Adverse Possession—Occasional Trespass Does Not Show Continuous Occupancy.—Occasional trespasses by cutting timber or otherwise is not such a continuous occupancy or assertion of ownership as will eventually ripen a title in the trespasser.

6. Mines and Minerals—Possession of Minerals Separate from Surface Such as the Nature of the Property Admits is Sufficient.—The rule that possession such as the nature of the real estate will admit of and such as is necessary for the use it is applied to is sufficient applies to the adverse possession of minerals the same as to the possession of the surface.

7. Mines and Minerals—Interruption of Possession Held to Prevent Acquisition of Title to Minerals.—Where the evidence showed conclusively that the possession of minerals by defendant and his predecessors in title had been interrupted at one time by a judgment in favor of plaintiffs, and at a later time by cessation of all attempts to operate the mines, so that there was no continuous possession for the statutory period of fifteen years, a verdict was properly directed for plaintiffs, even though there was conflicting

evidence as to whether the operation of the mines during the intervening periods was sufficient to show adverse possession.

8.  **Mines and Minerals—Possession of Surface Under Absolute Deed is not Adverse Possession of Severed Minerals.**—Where a grantee of the surface, under a deed reserving the mineral rights, conveyed the premises by an absolute deed, without reservation of the minerals, the possession of his grantee, and of remote grantees under similar deeds, of the surface was not adverse possession of the minerals, since the enactment in 1906 of Ky. Stats., 1922, section 2366a, which provides that one in possession of the surface from which the mineral rights have been severed is in possession of the minerals for the benefit of the owner.

WORTHINGTON, COCHRAN, BROWNING & REED for appellant.

WILLIAM LOWE for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This action involves the title to the coal and other minerals under about fifty acres of land in Bell county and which is a part of a patent granted to Thomas Henderickson on the 15th day of May, 1823. The father of plaintiffs and appellees, James J. and T. S. Gibson, was a remote vendee of the patentee, and he died intestate some time prior to February 22, 1881, on which latter date plaintiffs conveyed the fifty acres of land to William North, but expressly reserved and excluded from that conveyance all of the minerals underlying the tract. By successive conveyances from North, appellant and defendant below, A. J. Asher, became the owner by title bond in 1889, not obtaining a deed from his vendor until 1905, but he took possession in 1900. The deed from North to his immediate vendee was an absolute one as was also the intervening ones from him to the defendant. In about 1891 or 1892 the then title holder from North (a corporation) undertook some sporadic mining operations on the tract and plaintiffs filed an action against it to quiet their title to the minerals and to enjoin defendant therein from trespassing upon their mineral rights, in which case a judgment was rendered in 1894 in accordance with the prayer of their petition, and for a while at least the trespassing upon their rights ceased. There had been one or two small openings made on the tract before plaintiffs sold to North but that appears to have been for the purpose of obtaining coal for individual use rather than for general commercial purposes. After defendant obtained possession under his

title bond, one of those old openings was cleaned out and he commenced in a small way to take coal therefrom, but that place was later abandoned and two other small openings were made on the tract and some coal taken therefrom, but neither they, as is admitted by defendant, nor any other openings on the land were operated for any purpose for the three years intervening between 1903 and 1906. After that some coal was taken from some one or more of those openings, but at irregular times and neither before that interregnum nor since has there been any regular and continuous operation of any of the openings in the manner of usual and customary mining operations. All of them were sporadic and for short periods and during irregular seasons so as to make them analogous to and correspond with occasional trespasses committed by cutting timber.

The answer put in issue plaintiffs' title to the minerals and relied on an acquired title thereto in defendant by adverse possession. Paragraph three also pleaded that there were other heirs to plaintiffs' father and that they were the owners of a fractional undivided interest, if any, in and to the minerals and sought to limit their recovery, if any, to their actual interest, but an amended answer was afterwards filed expressly withdrawing that paragraph and without reiterating it in any of the defensive pleading. Appropriate pleadings made the issues, and the question of adverse possession was by agreement submitted to a jury which the court directed, after introduction of the evidence, over the objections and exceptions of defendant, to return a verdict for plaintiffs, overruling a like motion made at the same time by defendant. No other instructions were offered or given, and defendant's motion for a new trial was overruled and he appeals, urging by his counsel as grounds for reversal, (1) that the petition was insufficient and the demurrer thereto should have been overruled; (2) error in adjudging plaintiffs the whole interest in the minerals, and (3) error of the court in directing a verdict for plaintiffs, which objections we will dispose of in the order named.

The ground for objection (1) is that the petition did not allege ownership of or title to the minerals by plaintiffs, and for that reason the demurrer to it should have been sustained; but the alleged ground for the objection is unfounded in fact, since the petition expressly avers "Plaintiffs further state that recently the defend-

ant has begun to clean out and enlarge the old entries of a coal mine or bank which many years ago had been opened by the vendors of plaintiffs and has begun to remove the coal from said mine and has removed some of the coal therefrom, being a part of the coal which was reserved and not sold or conveyed by plaintiffs to the said Wm. North by said deed above referred to and which the plaintiffs own under legal title and of which they have at all times had the actual possession.'' It therein appears that plaintiffs specifically alleged their ownership under legal title of the minerals involved ''and to which they have at all times had the actual possession,'' which fact effectually disposes of this objection.

One conclusive answer to objection (2) is, that after plaintiffs expressly withdrew paragraph three of its answer in which that *pro tanto* defense was relied on, and failed thereafter to again plead it, the record was left barren of any such issue. No defect of parties plaintiff appeared upon the face of the petition and without it being made to appear by a plea in abatement or otherwise the court had no such issue before it for determination. It could only act and adjudge the rights of the parties as they appeared from the pleadings. When plaintiffs withdrew that *pro tanto* defense. or that matter in abatement it left the record as showing that plaintiffs were the sole owners of the property involved, and there was no other course for the court to pursue but to adjudge the rights of the parties upon that hypothesis and there is, therefore, no merit in this objection.

As supporting the ruling of the court complained of under objection (3), plaintiffs urge, and which defendant strenuously combats, (a), that the attempted use and appropriation of the minerals by the various owners of the surface from North down to defendant in the manner hereinbefore indicated did not constitute adverse possession of the minerals by the owner of the surface, and (b), if it should be conceded that there was a contrariety of evidence upon that issue the directed verdict was proper, since both parties moved for a peremptory instruction in their favor and asked for no other instructions submitting any contested issues. Those two contentions involve the principal questions in the case, which we will now proceed to determine.

In disposing of the first one, (a), it might be appropriate to state at the outset that the reservation of

the minerals in the deed executed by plaintiffs to North is proven beyond question and, indeed, is admitted by defendant. It would be a useless consumption of time for us to undertake to show that a separation of the surface from the minerals under it, and the corresponding creation of two distinct estates in the two classes of property, may be created by a reservation in a deed conveying the surface as effectually and completely as it may be done by a separate and distinct deed to the minerals. The former method of creating such separate estates and segregating the two properties has often been recognized by this and other courts, and we will not encumber the opinion with cases so holding. In solving the question presented, it should also be remembered that title acquired by adverse possession has its inception in an original wrong, and the right to acquire title in that manner is recognized only in furtherance of a sound public policy of repose, whereby the true owner must attempt to assert his title within the time prescribed by the statute after the requisite quality of adverse assertion is made and continued by another. If not done within that time the statute in effect says to the owner, "You have recognized and acquiesced in the prevailing conditions for the statutory period until, perhaps, the evidence of the claim of your antagonist has been destroyed and for the purposes of repose, and to maintain the *stautus quo* which you have thus allowed to be created the law will not now destroy it at your instance." But in order for such consequences to be visited upon the true owner it is everywhere recognized that the adverse holder must, in the language of some of the opinions, "Keep his flag flying," which is to say, that his holding must be continuous and uninterrupted for the statutory period and that an uninterrupted claim of title throughout that time must be made by the one so holding. In other words, the adverse possession must be such as to give a cause of action for every moment of the statutory period; if it is broken it ceases to run and will not again accrue until a new adverse holding is begun, in which case the prior holding before the break may not be tacked on to the subsequent one to complete the period. Ashcraft v. Courtney, 121 S. W. (Ky.) 625, and not elsewhere reported; Young v. Pace, 145 Ky. 405; Whitley County Land Co. v. Powers, 146 Ky. 801; Kentucky Coal Lands Co. v. Wilder, 165 Ky. 293; Britt v. Howser, 171 Ky. 495; Sackett v. Jeffries, 182 Ky. 696,

and Bryant v. Hamblin, 183 Ky. 716. No cases hold to the contrary and the outlined essentials to the acquisition of title by adverse possession are everywhere recognized. As a corrollary to the doctrine, it is held by this and other courts that occasional trespassing by cutting timber, or otherwise, is not such a continuous occupancy or assertion of ownership as will eventually ripen a title in the trespasser, since between the trespasses his flag was not flying so as to continuously notify the true owner of the character of entries upon the latter's possessions. Some of the cases from this court so holding are Muse v. Payne, 144 Ky. 30; Stearns Coal and Lumber Co. v. Boyatt, 168 Ky. 111; Carter v. Elkhorn Coal Co., 173 Ky. 378; Standifer v. Combs, 184 Ky. 708, and Bibb v. Daniels, 183 Ky. 659.

In the cited Britt case, it is pointed out "that a possession, such as the nature of the real estate will admit of and is necessary for the use it is applied to, may be regarded as actual, continuous and adverse, though not in the actual use or occupancy" of the adverse holder all the time, and that such an occupancy and use if persisted in for the statutory period will satisfy the requirement as to continuous possession. That doctrine is applicable to the adverse possession of minerals the same as to the possession of the surface, as will be seen from the text in Barringer and Adams on the Law of Mines and Mining, pages 568-9, and the cases of Gordon v. Park, 202 Mo. 236, and Armstrong v. Caldwell, 53 Pa. St. 282. It is furthermore said in the Britt case: "But with respect to all classes of property the continuity of possession and the use to which the property is put must be of such a nature as to put the real proprietor upon notice that a hostile claim is asserted. Disconnected periods of occupancy when there is no obstacle such as here existed or occasional entries for purposes of pasture or cutting timber or cultivation will not be sufficient to answer the requirements of continuity: Smith v. Chapman, 160 Ky. 400. And if the continuity of possession be broken by voluntary abandonment, or by the surrender of the premises to another, or by any other act that would indicate that the adverse holder was not asserting claim to the property, it will be fatal to his case."

What other effect, if any, may be given to the judgment in favor of plaintiffs in 1894 against plaintiffs' remote vendor (once removed), that judgment undoubt-

edly had the effect to interrupt all prior adverse holdings of the minerals under the land in controversy so as to deprive any subsequent adverse holder of the right to tack to his holding any such prior holding so as to complete the statutory period. The adverse holding necessary to ripen into a title according to the doctrine of the cases, *supra,* must have begun after the rendition of that judgment, and even if it had been continuous from that time till 1903, when it is agreed by defendant that it was abandoned and remained so till 1906, the period did not ripen between those dates, and during or after 1906 it was necessary to begin a new adverse holding, and for it to continue in the manner indicated for the statutory period. It did not do so in this case, if it be conceded that the mining operations performed were continuous and not sporadic. The action was filed on June 25, 1917, eleven years after 1906, and which was four years before the expiration of the statutory period. If, therefore, as we have hereinbefore remarked, the possession by defendant of the minerals under the land had been of the character described above it was not for the requisite period and he gained no title thereby.

But it is insisted by counsel for defendant that there is a contrariety in the testimony as to whether the operation of the openings on the land by the respective owners since the deed to North was of the nature to constitute an adverse possession, as above outlined, and because thereof the court erred in giving the peremptory instruction to the jury to find for plaintiffs on that issue. A sufficient answer to that contention is that the judgment in 1894 re-established the title to the minerals in plaintiffs and which judgment under elementary principles is binding upon defendant who is a privy to the defendant in that action, and if the possession of the minerals from that time till 1903, when it was abandoned for three years, had been of the requisite character to constitute adverse possession it did not continue for the statutory period, and neither was the period sufficient upon a resumption of possession after the time of abandonment and before the beginning of this action. So that, if we should concede that the various periods of possession measured up to the requirements of the law as to the necessary character of possession none of them was of sufficient duration to bar plaintiffs' rights; and this renders it unnecessary to discuss or determine

contention (b), made by plaintiffs and combatted by defendant, although there is abundant authority and much sound reason in support of it.

It is finally insisted that in all the deeds executed by the remote vendees of North since the rendition of the judgment in 1894 purported to convey the absolute and entire title to the fifty acres of land in controversy, and that the possession of those vendees under their absolute deeds *ipso facto* became adverse to the owners of the minerals from the time the possession was taken. In other words, that possession under such absolute deed was at least a *prima facie* assertion of possession of not only the surface of the land but of everything composing a part of it, including the minerals thereunder, and in support of that contention reliance is had exclusively on the case of Herrel v. Porter, 8 Ky. Op. 265. The opinion in that case was rendered on December 16, 1874, by Judge Cofer, and in it he makes the statement, "If he (the owner of the surface) entered under a deed purporting to convey the whole estate in the land, and put it upon record, this was such as act as would ordinarily be *prima facie* evidence of an intention to claim the whole, and his possession would thenceforward be adverse to the owners of the coal." The question was not necessary to be determined in the disposition of the case, since it was held that the petition failed to disclose that plaintiffs were the owners of the mineral, and for that reason judgment should have gone against them instead of in their favor. The inserted excerpt from the opinion may, therefore, be regarded as dictum. But whether so or not, we are unconvinced of its soundness in view of the later opinions from this court separating the character of estates in the surface and in the minerals rendered since the enactment in 1906 of section 2366a, 1922 edition of Kentucky Statutes. That section was construed in the case of Farnsworth v. Barrett, 146 Ky. 556, as being declaratory of the common law and as making the surface holder a trustee for the owner of the minerals; so that his holding of the two separate and distinct estates were held in separate and distinct capacities, and in order for him to become an adverse holder of the estate of which he was trustee (the minerals) it would necessarily follow that all of the requisites to convert his presumptive amicible holding of the trust estate into an adverse one against his *cestui qui trust* should exist.

In the case of Big Sandy Co. v. Ramey, 162 Ky. 236, this court said: "The possession under a general warranty deed of a tract of land is the possession of all of the elements of the land and of everything underneath the surface, unless the mineral products have theretofore been separated from the ownership of the surface by previous conveyance." It will be observed that it was therein stated that the holding of the surface under a general warranty deed for the whole of the land would be adverse "unless the mineral products have theretofore been separated from the ownership of the surface by previous conveyance." We have hereinbefore shown that the separation of the two estates may be as effectually made by reservation as by direct conveyance of them separately and the principle announced in the Ramey case would apply whether the separation was created by the one method or by the other.

In an effort to sustain the dictum in the Herrel case, it is argued that the situation of the holder of the surface under an absolute deed is similar to and may be likened to a deed to the whole estate executed by a joint tenant or a tenant in common, or by only a life tenant, and that possession under such a deed of the whole estate would ripen into a perfect title against the other joint tenants or those in remainder after the expiration of the statutory period. Without stopping to inquire into the correctness of that conclusion, it is sufficient to say that the conditions are by no means analogous. A nearer parallel situation would be where one conveyed a tract of land of which he was the owner and also another one separated therefrom and of which he was not the owner. The taking possession by the vendee in the supposed case of the tract of which his vendor was the owner would not *ipso facto* put him in possession of the other separate tract of which his vendor was not the owner, so as to start the statute of limitation as to the latter tract.

Sustaining the principles hereinbefore discussed is the text in the work on the Law of Mines and Mining by Barringer and Adams, hereinbefore referred to, and from which we take this excerpt: "Where the ownership of minerals in place is severed from the ownership of the soil or surface, the mere possession of the later is not such a possession of the minerals beneath as to be adverse. Nor will the non-user of the minerals or of the

right to dig them by the mine owner, convert the possession of the surface owner into an adverse possession of the minerals. The latter must perform some act adverse, hostile to the rights of the mine owner, which prevents him from exercising his rights. The surface owner setting up the statute must establish a possession of the mine as such independently of his possession of the surface. Such a possession must be actual, notorious, exclusive, continuous, peaceable, and hostile for the statutory period. And in these respects the surface owner is in no better position than a stranger. No act or acts on his part will establish title in him which would not give title to a stranger. Actual possession is taken by the opening of mines and carrying on of mining operations. That possession is continuous if the operations are continuous, or are carried on continuously at such seasons as the nature of the business and the customs of the country permit or require.''

Under the law, as we have briefly outlined, and which to our minds is supported by reason, logic and justice, we are unwilling to accept the dictum in the Herrel case as embodying a sound principle of law, and which if it was ever so was expressly departed from in the Ramey case, *supra,* and does not comport with the later opinions of this court rendered since the passage of section 2366a, *supra,* of the statutes.

Wherefore, the judgment is affirmed.