## Petroleum Exploration v. House et al.

(Decided May 18, 1937.)

EDWARD C. O'REAR and ALLEN PREWITT for appellant.

CARY, MILLER & KIRK for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

W. S. House claims to be the owner in fee of two adjoining tracts of land in Hancock county, containing

120 acres. On July 3, 1933, he executed an oil and gas lease to A. L. Fuqua, and on July 13, 1933, Fuqua assigned to Ed M. Egg, Louis Koerner, Ned Kress, Joseph Blessinger, and Albert Fritch, a one-eighth interest each in the lease, and to Fred A. Semershein, Alphonse Krapf, Jules Geisler, and R. M. Cooper, a one-sixteenth interest each. Fuqua thus retained a one-eighth interest in the lease. Fuqua and his associates entered upon the land and began drilling operations. Before the first well was completed, they were notified that Petroleum Exploration had a lease upon that part of the land where the well was being drilled. Petroleum Exploration moved a drilling rig onto the land, and thereupon W. S. House and his lessees brought this action to enjoin the Petroleum Exploration and others, named as defendants, from trespassing upon the land and leasehold estate, and from appropriating any of the oil or gas underlying the land, or interfering in any way with the plaintiffs in the possession of the land and the leasehold estate. Petroleum Exploration filed an answer which was merely a traverse; later it filed an amended answer and counterclaim in which it alleged that it was the owner of the oil and gas in and under 26.3 acres of the land claimed by W. S. House, that House owned only the surface of the land, and had, without right, executed an oil and gas lease thereon to his co-plaintiffs, who had wrongfully entered upon the 26.3-acre parcel and had removed oil therefrom, knowing that the defendant was the owner thereof. It asked that the plaintiffs be enjoined from entering upon the described parcel of land for the purpose of drilling or removing the oil or gas therefrom; that the defendant's title thereto be quieted; and that the plaintiffs be required to account for the oil and gas they had removed therefrom. Much proof was heard, and, upon submission of the case, judgment was entered granting the relief prayed for in the plaintiffs' petition, and Petroleum Exploration has appealed.

The controversy resolves itself into a question of title. W. S. House, in his deposition, introduced a number of deeds showing an unbroken chain of title to the surface of a tract of land, consisting of 101¼ acres, back to John Lyon, who conveyed it to Mary Staples March 17, 1873. By mesne conveyances it passed to Leo Rosenblatt, administrator of Samuel Rosenblatt, who conveyed it to the appellee W. S. House on November 9,

1931. The appellees, however, do not rely upon this paper title, but claim that the land in controversy, both surface and minerals, has been in the adverse possession of W. S. House and those under whom he claims for more than sixty years. They have renounced the paper title on the theory that John Lyon, who conveyed the land to Mary Staples in 1873, and who had previously conveyed the minerals to the Breckinridge Cannel Coal Company, was without title to the land, since he claimed title under a patent secured by him from the commonwealth of Kentucky in 1847, which was inferior to a patent theretofore issued to Thornton Taylor and therefore void. The difficulty with this contention is that the Breckinridge Cannel Coal Company was the owner of the land covered by the Thornton Taylor patent, and on June 1, 1855, it conveyed to John Lyon 101¼ acres of land in Hancock county. The deed contained the following reservation:

"Subject nevertheless to the following reservations and exceptions in favor of the Breckinridge Cannel Coal Company their successors and assigns forever, to-wit:

"The right title and ownership of all the coal in the ground, iron ore, salt springs and every other mineral or thing contained in the ground or in the soil and also the full perfect and free right of working and removing the same at any time or times in and on the said above described land with the right of ingress and egress and also right of way for railroads or railroads, plank roads or other roads and all of them that may be necessary for working the said mines minerals, etc. and removing the same * * * it being understood and agreed that the said Pierson as President aforesaid hereby conveys or intends to convey only the surface use of the said above described land to the said party of the second part for farming purposes."

On the same day, John Lyon and wife executed and delivered to the Breckinridge Cannel Coal Company a quitclaim deed to 1,000 acres of land, which included the 101¼-acre tract described in the deed from the coal company to Lyon. The deed from Lyon to the coal company contained this reservation:

"Excepting and reserving always neverthe-

less to the said John Lyon, his heirs Executors and assigns forever, the surface use of One Hundred and one and one-fourth acres of said, above described one thousand acres of land for farming purposes,

"And for more particularly description of said one hundred and one and one-fourth acres of land, reference is had to a certain deed bearing even date herewith conveying the same to the said party of the first part."

These deeds were executed for the evident purpose of removing the cloud on the respective titles caused by the conflicting patents, and resulted in severing the surface and mineral estates in the 101¼-acre tract.

The Breckinridge Cannel Coal Company owned a large tract of land in Hancock and Breckinridge counties. Some it owned in fee and in some it owned only the minerals. By mesne conveyances the title to 7,000 acres of this land, including the mineral rights in the land here in controversy, passed to the Hancock Land & Improvement Company. On April 26, 1927, the Hancock Land and Improvement Company executed an oil and gas lease on its entire tract of land to Fleming R. Douthitt. On April 23, 1928, Douthitt assigned a large boundary of the lease, including the tract in controversy, to R. W. McMahan, who subdivided the boundary assigned to him into 40-acre blocks, and thereafter assigned blocks to various corporations and individuals. Block No. 65, which includes the land in controversy, was assigned to the appellant, Petroleum Exploration, on November 5, 1928. Some of the assignees began immediate development for oil and gas, and during the years 1928 and 1929 a number of producing oil wells were drilled. The appellant did not undertake to develop block No. 65 until the autumn of 1933 when this action was instituted. The appellees endeavored to show that the 101¼-acre tract claimed by W. S. House was not in the boundary of land owned by the Hancock Land & Improvement Company, but the evidence conclusively shows that it is embraced in that boundary. The evidence further shows that House, at the time he undertook to lease the land to his coappellees, was without title to the minerals. The Hancock Land & Improvement Company had a clear paper title to the minerals, and had executed oil and gas leases on the 101¼-acre

tract many years prior to the execution of the lease to Douthitt. Development work had been done on this particular tract, and one gas well had been drilled thereon before House acquired title to the surface. There is no evidence that House or any of his predecessors in title to the surface, prior to the execution of the lease to Fuqua, claimed the minerals or exercised such dominion over them as constituted adverse possession. They, as owners of the surface, were trustees holding the minerals for the use and benefit of their owner and could not, by possession of the surface, disseise the owner of the minerals unless they openly disavowed or repudiated the trust and gave notice thereof to the owner of the mineral estate. Hale v. Horn, 265 Ky. 560, 97 S. W. (2d) 402; Smith v. Graf, 259 Ky. 456, 82 S. W. (2d) 461; Piney Oil & Gas Co. v. Scott, 258 Ky. 51, 79 S. W. (2d) 394; Ratliff v. Sinberg, 258 Ky. 203, 79 S. W. (2d) 717; Franklin Fluorspar Co. v. Hosick, 239 Ky. 454, 39 S. W. (2d) 665; Prewitt v. Bull, 234 Ky. 18, 27 S. W. (2d) 399; Asher v. Gibson, 198 Ky. 285, 248 S. W. 862.

It is argued by the appellees that appellant had forfeited its lease by failure to drill within five years after the lease was executed by the Hancock Land & Improvement Company to Fleming R. Douthitt, but they cannot invoke the forfeiture provisions of a lease to which they were not parties and in which they are not interested. While this case was pending in the circuit court, the Hancock Land & Improvement Company brought a suit to cancel a large part of the 7,000-acre lease for alleged failure on the part of various sublessees to develop their leases, and the appellant, Petroleum Exploration, was named a defendant in the petition, but it was never served with a summons. The plaintiff in the action, through its attorneys, notified appellant that as to it the litigation was friendly and the plaintiff did not intend to cancel its lease. It thus recognized appellant's title, and waived any question of noncompliance with the terms of its lease.

Appellant insists that appellees are willful trespassers and therefore it is entitled to recover from them the gross proceeds of the oil taken from the land. In view of the uncertain state of the title and the surrounding circumstances, we think the appellees acted in good faith and are not willful trespassers. The damages should be assessed in accordance with the rule applied

in Swiss Oil Corporation v. Hupp, 253 Ky. 552, 69 S. W. (2d) 1037.

The judgment is reversed, with directions to enter a judgment in conformity herewith.