## Hughett et al. v. Caldwell County et al.

May 19, 1950.

H. F. S. Bailey, Judge.

86

C. A. Pepper and Hughett & Hughett for appellant.

E. M. Nichols, C. R. Baker and Charles McGough for appellee.

STANLEY, COMMISSIONER—Reversing.

The suit is to recover the value of fluorspar mined from property of the plaintiffs, John Hughett and Mrs. Maude Hughett, the defendants, Caldwell County and its lessee, H. W. Morse, being charged as willful trespassers. The circuit court adjudged that the defendants, as innocent trespassers, were liable for royalty usually prevailing in the vicinity, which was 10% of the value of the mineral extracted. The two issues in the case are (1) whether the trespass was willful or innocent, and (2) the measure of recovery if the adjudication that the defendants were innocent trespassers be affirmed.

After the abandonment of a section of road in 1937, Caldwell County executed a mineral lease of the old right of way to Morse for the mining of fluorspar. Litigation having arisen over the title to the property, Morse was cautious enough not to begin operations until after the judgment was rendered that title was in the county, his lessor or grantor. This was in June, 1940. He then mined the property until that judgment was superseded in January, 1941. During this time Morse mined and removed fluorspar and some by-products of lead and zinc, which he sold for approximately $35,000. In May, 1941, the judgment was reversed and title held to be in the Hughetts. Hughett v. Caldwell County, 288 Ky. 89, 155 S. W. 2d 481. Sequels are Caldwell County v. Hughett, 301 Ky. 397, 192 S. W. 2d 194, and Morgan v. Hughett, 301 Ky. 409, 192 S. W. 2d 197.

It has been concisely said in a case of this kind that the difference between a willful and an innocent trespasser is "the one knows he is wrong and the other believes he is right." Swiss Oil Corp. v. Hupp, 253 Ky. 552, 69 S.W.2d 1037, 1039. The specific delineation is that a willful trespasser is one who knowingly and willfully encroaches or enters upon the land of another and takes his mineral without color or claim of right, or one who dishonestly or in bad faith mines minerals of another and converts them to his own use, while an innocent trespasser is one who does so under color of right or in good faith by mistake. Johns Run Coal Co., v. Little Fork Coal Co., 223 Ky. 230, 3 S. W. 2d 623; Kentucky Harlan Coal Co. v. Harlan Gas Coal Co., 245 Ky. 234, 53 S. W. 2d 538. Various tests and factors to be considered in determining in which category a trespasser should be placed are outlined in the Hupp case, supra.

The opinion in Hughett v. Caldwell County, supra, reflects the confusion and the difficulty in determining the title to this strip of land. During the entire time until the entry of another judgment in favor of the Hughetts, under direction of this court, the county and Morse were in the actual possession of the land. Moreover, they had relied upon the judgment of the circuit court, as they had the right to do. There was no invasion or taking of the mineral until it had been adjudged they had the right to it and the opposing parties had apparently accepted the decision, for they delayed six months in superseding the judgment. As in the Hupp case, they "had the full right to proceed under it without an imputation of bad faith." See also Rowe v. Arnett, 241 Ky. 768, 45 S. W. 2d 12; Kidd v. Roundtree, 285 Ky. 442, 148 S. W. 2d 275; Petroleum Exploration v. House, 268 Ky. 631, 105 S. W. 2d 804. We are of opinion the trial court rightly held the defendants to have been innocent trespassers.

The difficult question is the measure of recovery—whether royalty or the net profit made by the trespasser. The circuit court in adjudging royalty followed our decisions where coal was the mineral removed.

In Swiss Oil Corp. v. Hupp, supra, we thought the differences between the fugacious quality of oil and gas and a fixed and solid mineral, and between an oil and gas lease and a coal lease (which is in fact, under Kentucky law, the conveyance of absolute title to the mineral) should make a difference in the measure of recovery. However, it was not required that the rule as to solid minerals should there be changed. Another important factor in the case was that the suit was between lessees, each claiming priority. The one or the other was entitled to the oil, the owner of the land receiving royalty in any event. We followed the weight of authority and held the recovery to be "the value of the oil at the mouth of the well, less the amount reasonably expended in producing it" or, stating it another way, "the net value of the oil as established by the sale price." That rule has been since applied to the removal of minerals of that character. Kentucky West Virginia Gas Co. v. Hatfield, 260 Ky. 315, 85 S.W.2d 672; Lawrence Oil Corp. v. Metcalfe, 266 Ky. 819, 100 S.W.2d 217; Petroleum Exploration v. House, 268 Ky. 631, 105 S.W.2d 804. But where the litigation was between one who had been adjudged

to have title to a fractional interest in land previously leased for oil and gas and there appeared to have been an election to recover on a royalty basis, we held that to be the measure of recovery rather than net proceeds. Stephens v. Preston's Heirs, 300 Ky. 843, 190 S.W.2d 468.

We are here confronted with the question whether or not this court should follow the conclusions in the Hupp case or adhere to the cases holding that under any and all conditions the right of recovery from an innocent trespasser who has extracted coal or other solid mineral is the customary royalty and nothing more.

Our first case, apparently, to lay down the rule as to the measure of liability of an innocent trespasser, was where the owner had no feasible way of extracting the coal except through the trespasser's opening, and it was said to be a clear case where royalty was due and proper compensation. Sandy River Cannel Coal Co. v. White House Cannel Coal Co., 125 Ky. 278, 101 S.W. 319, 102 S.W. 320, Id., 101 S.W. 319, 30 Ky.Law Rep. 1308, Id., 102 S. W. 320, 31 Ky. Law Rep. 374. The next case was also a suit by an owner who was receiving royalty from his adjacent land. Following the first case, the recovery was held to be "the value of the coal taken as it lay in the mine, or the usual reasonable royalty paid for the right of mining." It was observed "if the owner gets this, he is usually made whole; and he cannot ask for more." Burke Hollow Coal Co. v. Lawson, 151 Ky. 305, 151 S.W. 657. Subsequent cases regarded "value of the coal" and "reasonable royalty" as synonymous terms. Most of them have been suits by owners who, under ordinary circumstances, could or would receive only royalty for their minerals. But Falls Branch Coal Co. v. Proctor Coal Co., 203 Ky. 307, 262 S.W. 300, 37 A.L.R. 1172, was between two operating companies. One brought an action of trover against the other to recover the value of coal innocently mined and converted to its own use. We held a party may not, at his option, upon the same state of facts, adopt either one of two remedies and thereby change the rules measuring or declaring the extent of his relief; that is, he will not be permitted to waive trespass and proceed against the trespasser to recover the converted personalty though he might against a wilfull trespasser. The court then followed previous decisions and held the measure of recovery to

be royalty. So it has been written from time to time that the rule prevails in this jurisdiction that if the trespass is innocent, the measure of recovery is "based upon reasonable and customary royalty, or the value of the mineral in place." Johns Run Coal Co. v. Little Fork Coal Co., supra, 223 Ky. 230, 3 S.W.2d 623, 624, is typical. Upon full consideration, we conclude that the terms "royalty" and "value" should not be regarded as synonymous but as alternative measures of recovery. The rule heretofore followed makes no differentiation where the owner is merely holding the land undeveloped or is unable to get out his mineral (as in Sandy River Cannel Coal Co. v. White House Cannel Coal Co., supra), and where the owner or a lessee, as the case may be, is actively mining or developing the property or is in position to do so within a reasonable time.

In any case of innocence of the trespass, the owner of the minerals, whether in fee simple or under a mining lease, is in effect compelled by operation of law to execute a retroactive lease to the trespasser, though he may be ever so adverse to doing so, to him or to anybody else. Where one is in position to mine his own mineral, he has lost more than that. He has lost the right to mine it himself. One ought not to be deprived of the right of developing and getting out his own mineral and of reaping the profit himself, and the trespasser ought not to be allowed unjust enrichment. Royalty is a matter of contract—not of damages for a tort.

It is the universal inference of the law that every unauthorized entry upon the land of another person results in some damage, though it may be nominal. Where there is actual injury, just compensation must be made. In the case of real property generally the proper measure of damage is the difference between the value of the realty before the injury and its value after the injury "except where there is a total destruction, when the owner is entitled to recover the entire value." 52 Am. Jur., Trespass, Sec. 49. It is also as well settled that a "trespasser is responsible in damages for all injurious consequences flowing from his trespass which are the natural and proximate result of his conduct." 52 Am.-Jur., Trespass, Sec. 50. Compare Edwards v. Lee's Administrator, 265 Ky. 418, 96 S.W.2d 1028. In this class of cases, the courts of the country have differed on the

question of what constitutes actual loss and proper compensation as well as the method of ascertaining it. The conflict, it is said, has grown out of common law forms of action. 36 Am. Jur., Mines and Minerals, Sec. 231. It seems to us the initial and comprehensive note in 7 A.L.R. 908, stating the concensus, points to another cause of confusion in the decisions, namely, the difficulty and uncertainty of proving value in some instances and the availability of proof in others. It is stated in the annotation that the prevailing view of liability of a trespasser, who inadvertently or under a claim of right or bona fide belief of title, removes minerals of another, is damages based on the value of the minerals "as they lay in the mine before being disturbed, or, as is often expressed, their value in situ." This is to recognize that ordinarily the measure of damage for injury to real estate is the difference between the reasonable market value immediately before and after injury. The note continues, "And if evidence is not obtainable of the value of the minerals in situ, or if the circumstances of the case make it impracticable to fix their value in this manner, the same result is generally arrived at by proving their value at the mouth of the pit, and deducting therefrom the expense of mining and transporting them to that place." Additional annotations will be found in 23 A.L.R. 193.

Compensation is always the aim of the law. It is "the bottom principle of the law of damages. To restore the party injured, as near as may be, to his former position is the purpose of allowing a money equivalent of his property which has been taken, injured, or destroyed." The criterion of diminution, or of the difference before and after the loss, "is adopted, not as that ideal one, but as the surest of which the case is susceptible. * * * If the thing taken or destroyed can be replaced in the market, then obviously, that sum of money which will buy another like it will repair the injury." Cincinnati, N. O. & T. P. Ry. Co. v. Falconer, 97 S.W. 727, 728, 30 Ky.Law Rep. 152. "The measure of damage varies according to the facts of different cases," and particular and peculiar property calls for whatever seems just and sufficient to make the injured party whole. Reed v. Mercer County Fiscal Court, 220 Ky. 646, 295 S.W. 995, 54 A.L.R. 1275; 25 C.J.S., Damages, sec. 85. Where there is a total loss of property, the

total reasonable value to the owners is the measure of compensation.

Therefore, where minerals have been innocently extracted and sold, the question in each case is whether in the circumstances royalty or the net market value of the mined mineral is the just and due compensation. Where the owner could not extract the minerals himself in any practical or feasible way, or where he is merely holding his property for development in the unforeseeable future, by himself or by a lessee, the value is as it lay in the ground. All he could expect to receive is the usual and customary royalty. Moreover, that is about the only available proof of value. But under other conditions where it is practical to establish their value at the mouth of the mine or pit, that is the measure of his pecuniary loss, and that should be his compensation. Value at that place is regarded as the market value, and the best evidence of it at that time is the net sum received for it, which, of course, takes into account the reasonable cost of selling or marketing it. We, of course, conceive that there may be no profit due to imprudent or inefficient mining or bad business judgment. Such a case would seem to require special consideration according to the peculiar facts in order that the owner may receive just compensation.

This conclusion, it seems to us, is based upon practical considerations. We have consistently recognized that the obligation of a wrongful or willful trespasser is compensation in full for the mineral when mined without allowance for the expense, which is the imposition of a penalty. There is too great a difference between this liberality in one case and mere royalty in another where it is clear that royalty is not complete or just compensation. Why should not the innocent trespasser also pay the owner in full for his loss—for the destruction of his property and the right to mine it? Why should one be allowed to impose upon the unwilling owner what is in effect the conveyance of his minerals for his own enrichment when the owner is in position to obtain that profit for himself? See Edwards v. Lee's Adm'r, 265 Ky. 418, 96 S. W. 2d 1028, which is based in part on leading English cases. If the trespasser is forced to make restitution, then each party is made whole and neither will suffer. As was said in Swiss Oil Corp. v. Hupp, supra, "In a court of conscience, the one party is not chargeable

with more and the other is not entitled to less.'' (253 Ky. 552, 69 S. W. 2d 1046.)

In the present case, the plaintiffs were actively engaged in mining fluorspar from the tract to which the strip of land involved became a part by reversion. They were not only in position to have mined it but contemplated doing so. The abandoned roadway had no other value to them or to anyone else, for that matter. Its entire value lay in the mineral. Therefore, we are of opinion that the correct measure of damage and recovery is the reasonable market value of the fluorspar after it was mined less the reasonable cost incurred by the defendants in mining.

Former opinions where there were similar circumstances and conditions are to be no longer authoritative.

The judgment is reversed for proceedings consistent with this opinion.