**CALDWELL COUNTY et al. v.
HUGHETT et al.**

Court of Appeals of Kentucky.

Oct. 26, 1951.

Rehearing Denied May 16, 1952.

C. R. Baker, Charles McGough, Princeton, Earle M. Nichols, Waddill, Laffoon & Nichols, Madisonville, for appellants

C. A. Pepper, Princeton, Hughett & Hughett, Louisville, for appellees.

SIMS, Justice.

The parties will be referred to as they appeared in the trial court. The question for determination is what was the reasonable cost incurred by defendants, Caldwell County and H. W. Morse, innocent trespassers in mining $35,288.56 of fluorspar, usually referred to in the record as "spar", from the lands of plaintiffs, John Hughett and wife. The chancellor held the reasonable cost of the mining operations in producing this amount of spar was $13,502.42, but adjudged Morse was entitled to a further credit of $2,400 for eight months' services he performed in mining the spar, and judgment went against defendants for $19,386.14. Defendants appeal and plaintiffs cross-appeal as to the $2,400 allowed Morse.

A brief history of this litigation is given in Hughett v. Caldwell County, 313 Ky. 85, 230 S.W.2d 92, and reference is there made to the several appeals to this court. In that opinion we changed the rule as to the measure of damages where an innocent trespasser mines solid minerals, and held it is "the reasonable market value of the fluorspar after it was mined less the reasonable cost incurred by the defendants in mining". 230 S.W.2d 97.

There is no controversy as to the amount of spar produced, $35,288.56, nor as to the expense of the mining operations, $13,502.42, but defendants contend they should be credited for the amount it cost them to have the New York-Kentucky Mining Company, hereinafter referred to as the Company, sink a shaft on its property immediately adjoining that of plaintiffs, as well as the cost the Company incurred in pumping water from its mine and diverting the waters of a creek between its and plaintiffs' properties, all of which inured to the benefit of plaintiffs' mine and without which it would have been unworkable and impossible for defendants to operate. Defendant Morse attempted to prove he was out $23,000 in getting the Company to make these improvements on its lease for the benefit of plaintiffs' mine.

Hollowell & Hobby held a lease on what is known in the record as the Perry land upon which there was an abandoned spar mine. This abandoned mine on the Perry property, as we understand the record, was not more than 50 feet from plaintiffs' mine. Morse had leased plaintiffs' property from his codefendant, Caldwell County, after the Caldwell Circuit Court had adjudged title to the land to be in the county, which judgment the plaintiffs here did not supersede. Morse was without funds to develop the property he leased from the county on account of its flooded condition. He conceived a plan to obtain the Hollowell & Hobby lease and transfer it to someone with money who would sink a new shaft on it, divert the waters of the creek and keep the water pumped out of the Perry mine, which operations would keep the mine on plaintiffs' property dry and enable Morse to work it.

Morse got in touch with one Donald Adkins who interested Ray Ryan in subleasing the mine on the Perry property to the Company, which sunk the new shaft, diverted the creek and kept the water pumped out of the Perry mine. Ryan had a ⅜ interest in the Perry lease while Morse and Adkins each had a ¼ interest therein. Morse testified he had a written contract with Adkins wherein it was agreed between them that Morse would transfer his ¼ interest to Adkins in consideration of the latter sinking the shaft, diverting the creek and pumping the water out of the Perry mine, all of which was done by the Company after Ryan and Adkins transferred the lease to it. Morse testified the contract between him and Adkins was lost and could not be found and the chancellor allowed him to introduce oral testimony as to its contents. Adkins denied that he ever made any such contract with Morse.

Morse introduced proof that Adkins received $23,000 for the ¼ interest Adkins had in the Perry lease and for that reason Morse argues the ¼ interest therein which he transferred to Adkins was likewise worth $23,000 and he should be credited in this sum as an expense in operating plaintiffs' mine. He further argues that without the work done by the Company whereby it got rid of the water on the Perry lease, it would have been impossible to have operated plaintiffs' mine, as the same water flooded it that had flooded the Perry mine.

The chancellor in a full and exhaustive opinion held that any sum Adkins received from the ¼ interest in the Perry lease transferred to him by Morse could not be charged as an expense in operating plaintiffs' mine. We lift this excerpt from the chancellor's opinion:

"The defendant does not claim that he ever made any contract with the New York-Kentucky Mining Company to keep the water pumped out of his mine neither does he say that he ever paid that company anything for so doing. Adkins never pumped any water or so far as this record shows had any machinery with which to pump any water. The New York and Kentucky Mining Company was the only one who pumped any water for that mine. Let us bear in mind that the contract defendant is claiming under was made with Adkins and not with the one who pumped the water and Adkins was not its agent and never pumped any water.

"Whatever contract the defendant had with Adkins and whatever he paid him was not used in payment for pumping water or for keeping water pumped out of the mine. Hence it was not a part of the cost of mining the spar. Under these conditions the court is without authority to make the plaintiffs pay him for money he lost fooling with Adkins. If he sat around and let Adkins skin him out of several thousand dollars, he will have to look to Adkins to get that back, he can't make the plaintiffs do so. One witness said that Adkins bragged about skinning the defendant out of a lot of money and I think he did but that is his loss and not somebody elses."

Relative to the $2,400 allowed Morse as compensation for eight months' services in operating plaintiffs' mine, the chancellor said: "If the defendant is not entitled to be allowed compensation for the work he did as a part of the expense of mining the spar, then what do we have? The defendant with more than $35,000.00 he got for the spar he must pay the expense of mining the spar, pay the plaintiffs for the value of

their spar as it lay in the ground, pay the plaintiffs more than $15,000.00 profits he made, give the plaintiffs eight months work he did without compensation and he gets nothing, all the while acting under an un-superseded judgment in the best of faith doing as he 'had a right to do' and the 'full right to proceed without imputation of bad faith', as said in Hughett v. Cald-well County, supra."

The chancellor thought the in-direct expense Morse testified he incurred in his scheme to get the Perry lease de-veloped for the benefit of plaintiffs' mine was too remote to charge as an expense in operating plaintiffs' mine. The excerpt we have quoted from the chancellor's opinion so clearly expresses the reason for his so holding that we will not attempt to en-large thereon. Likewise, the chancellor's reasoning is clear in allowing Morse $2,400 for eight months' work as a reasonable mining expense in producing the spar from plaintiffs' mine.

The judgment is affirmed both on the appeal and on the cross-appeal.