Vol. 117]        SEPTEMBER TERM, 1903.        **71**

Louisville Gas Co. v. Ky. Heating Co.
Calor Oil & Gas Co. v. W. C. McGehee.

CASE 8—ACTION BY THE KENTUCKY HEATING COMPANY AGAINST THE
LOUISVILLE GAS COMPANY, &C., AND W. C. MCGEHEE AGAINST THE
CALOR OIL & GAS COMPANY, TO ENJOIN THE DEFENDANTS FROM
WASTING GAS IN MEADE COUNTY, KENTUCKY.—DEC. 11.

# Louisville Gas Co. v. Ky. Heating Co.

# Calor Oil and Gas Co., v. W. C. McGehee.

APPEAL FROM MEADE CIRCUIT COURT.

FROM A DECREE IN FAVOR OF PLAINTIFFS IN EACH CASE, DEFENDANTS
APPEAL. DECREE IN FIRST CASE AFFIRMED AND REVERSED IN
SECOND CASE.

NATURAL GAS—RIGHTS OF WELL OWNERS—WASTE—LEASES—FRAUD—
RESCISSION.

Held: 1. Though natural gas underlying the soil is not subject to
absolute ownership in its natural state, a lessee of natural gas
land is limited to a reasonable use of gas obtained from wells
sunk on the land, and is not entitled to waste the supply from
such wells for the purpose of cutting off the supply and injuring
the owners of other wells on adjoining land.

2. Plaintiff, who was the owner of gas land, leased certain of it to
a corporation for the purpose of drawing gas therefrom. There-
after T. applied to him to lease certain other lands for the
same purpose. Plaintiff refused to make a lease if it was in-
tended to do anything to injure the other lessee, but, on being
assured that such was not the intent, leased the land to T.,
and thereafter defendant corporation was organized, and ex-
pended $20,000 putting down gas wells and establishing a lamp
black factory on the ground. Gas in large quantities was ob-
tained from defendant's wells which was wasted by defendant
to the injury of the other lessee. HELD, that such facts did not
justify a cancellation of defendant's lease on the ground of
fraud, plaintiff and the other lessee being protected by statute
against defendant's further waste of the gas.

HUMPHREY, BURNETT & HUMPHREY, J. S. WORTHAM, F. M.
SACKETT AND ALEXANDER G. BARRET, FOR APPELLANTS.
(No brief in the record for appellants.)

MATT O'DOHERTY, EDWARD L. McDONALD, counsel for ap-
pellee.

J. W. LEWIS, of counsel.

### POINTS AND AUTHORITIES.

1. The owners of land lying above a gas reservoir, or common
source of supply, have a qualified property right in the gas and
a common right to bore for and secure the gas for all useful
purposes. These rights, like all others, are within the pro-
tection of the law and of the court. Donahue on Petroleum
and Gas, sec. 10; Amer. & Eng. Ency. of Law (2d ed.), vol.
21; Westmoreland, &c., Gas Co. v. DeWitt, 130 Pa., 235; Peo-
ples' Gas Co. v. Tyner, 130 Ind., 277; Brown v. Vandergrift, 80
Pa., 147.

2. In the case of underground waters, an owner of superin-
cumbent land has a right to obtain all the water he can, for
ordinary and reasonable uses, but there is a limitation upon his
right to negligently or maliciously injure his neighbors by af-
fecting or destroying their supply of such water. Chesley v.
King, 74 Me., 164; Roath v. Driscoll, 20 Conn., 533; 52 Am.
Dec., 352; Haldeman v. Bruckhart, 45 Pa. State, 514; 84 Am.
Dec., 511; Wheatley v. Baugh, 25 Pa. State, 528; 68 Am. Dec.,
721; Addison on Torts, p. 79, note.

3. The element of malice has been recognized in Kentucky, as
rendering actionable, what would otherwise be *damnum absque
injuria*. Crisman v. Bruce, 1 Duvall, 63; Canefield v. Bullock,
18 B. Mon., 497; Morgan v. Dudley, 18 B. Mon., 711.

4. Even in the absence of malice, the use of undue propor-
tion of underground water, without regard to the rights of oth-
ers, is actionable. Bassett v. Salisbury, 43 N. H., 569; Swett v.
Cutts, 50 N. H., 439; Hart v. Jamaica Pond Aqueduct Co., 133
Mass., 488; Smith v. City of Brooklyn, 18 App. Div. N. Y., 340;
Forbell v. City of N. Y., 164, N. Y., 522.

5. While it has been said Chambers v. Baldwin, 91 Ky., 121,
that an act lawful in itself, can not become actionable solely
because it was done maliciously, this does not justify the use
of what would otherwise be lawful means for the accomplish-
ment of an unlawful design, much less does it justify his right
to negligently or maliciously injure his neighbors by the use
of unlawful means for an unlawful end. Avery & Sons v.
Meikle & Co., 81 Ky., 107; Cyc. vol. 1, p. 647.

6. Courts of equity have jurisdiction to protect the source of
a common supply of natural gas against the reckless and im-
provident uses or waste of it by one owner of superincumbent

land.     State of Indiana v. Ohio Oil Co., 150 Ind., 21, 29 N.
E. Rep., 809; 47 L. R. A., 647; Ohio Oil Co. v. State of In-
diana, 20 Sup. Ct. Rep., 576, 177 U. S., 190; Townsend v. The
State, 147 Ind., 127.

7. The owners of superincumbent lands have the right to
protect from destruction the source of the common supply of
natural gas, and may enjoin any act of one owner which tends
to such destruction. Mfg. Gas & Oil Co. v. Indiana Natural Gas
& Oil Co., 57 N. E. Rep., 912.

8. The Legislature has declared it unlawful to waste natural
gas, and limited the right of a proprietor to use his property
in such a way as not to injure his neighbor, by wasting the
common supply of gas.     Act of May 14, 1892, Kentucky Stat-
utes, sec. 3910; Hague v. Wheeler, 157 Pa. State, 324, 22 L. R.
A., 141, (distinguished); Donahue on Petroleum and Gas, sec.
23, p. 19; Jones v. Forest Oil Co., 194 Pa. State, 369, 49 L.
R. A., 748.

9. A court of equity will not be deceived by a trick or device
such as the pretended use of gas in the alleged manufacture
of lamp black, but will look at the substance of things, and the
real intent of parties.     Pomeroy's Eq. Juris., sec. 378; Stand-
ard Dictionary, "Utilize."

10. Although the waste of gas complained of constitutes a
public nuisance, the appellee who is specially injured by it can
maintain an action to prevent it. Mfg. Gas & Oil Co. v. Ind.
Natural Gas & Oil Co., supra; Corley v. Lancaster, 81 Ky., 171;
Green v. Asher, 10 Ky. Law Rep., 1006; Dulaney v. L. & N.
R. R. Co., 100 Ky., 628. Distinguished.

OPINION OF THE COURT BY JUDGE HOBSON.

There is a natural gas field in Meade county, from which
the gas is piped to Louisville by the Kentucky Heating
Company, and there sold for heating and illuminating pur-
poses.   The Louisville Gas Company claimed the exclusive
privilege of selling illuminating gas in the city of Louis-
ville.   There was a long litigation between it and the Ken-
tucky Heating Company, resulting in a judgment of this
court on June 20, 1901, that the heating company has the
right to sell natural gas for heating and illuminating pur-

poses, also the right to make and sell artificial gas for
fuel, but not the right to sell artificial gas alone or in mix-
ture with natural gas for purposes of illumination without
violation of the gas company's exclusive privilege. Ken-
tucky Heating Co. v. Louisville Gas Co., 23 R., 730, 63 S.
W., 751. On September 3, 1901, or about three months
after this judgment was rendered, the Calor Oil & Gas
Company was incorporated. Its capital stock was fixed
at $1,000, divided into 100 shares of $10 each. John A.
Gray, Harry Wirgman, and W. A. Jones were the incorpo-
rators, subscribing for the entire stock of the company;
but neither of them paid anything therefor, or really owned
the stock. They subscribed for it for A. Hite Barrett,
the chief engineer of the Louisville Gas Company, Udolpho
Sneed, the president of the gas company, and Will Speed,
the son of J. B. Speed, a stockholder in the gas company.
The stock was paid for by A. Hite Barret, Udolpho Sneed,
and J. B. Speed, who were the real organizers of the com-
pany. The articles of incorporation were drawn by a son-
in-law of J. B. Speed, and he is now the president of the
company. The money which was paid in for the stock was
placed in bank to the credit of the company thus formed,
and has since remained there. In the winter before this
corporation was formed John H. Trent, a lawyer living in
Meade county, who seems to have been in the employ of the
gas company previous to that began taking leases of land
for gas in the gas field, and took quite a number. In doing
this he acted it appears, as the agent of Barret, Snead,
and Speed, and after they organized the Calor Oil & Gas
Company these leases were assigned to it. It is also shown
that for some time before the organization of this com-
pany they had been considering the gas field in Meade

county, from which the Kentucky Heating Company ob-
tained its gas, and one of their objects in getting the leases
and organizing the Calor Oil & Gas Company was to in-
terfere with the supply of that company, and thus cripple
it as a rival of the Louisville Gas Company. They put
up between them about $10,000, which they spent in Meade
county in boring wells and in erecting what is called a "lamp
black factory." In addition to this, when the depositions
were taken they had incurred liabilities for about $10,000
more, which were then unpaid. They succeeded in getting
several good gas wells, from which the gas was piped to
their lamp black factory. When they began operations,
the Kentucky Heating Company had a gas pressure of
something over sixty pounds. In five or six months this
was run down to less than thirty. On these facts the
chancellor on the petition of the Kentucky Heating Com-
pany, enjoined the operation of the lamp black factory on
the ground that it was operated only to waste the gas, and
thus destroy the Kentucky Heating Company. From
this judgment the defendants appeal.

A close fence twelve feet high, was built around the
lamp black factory, and no one was admitted within the
inclosure. It stood on a half acre of ground leased for
that purpose, and no one was permitted to come on this
half acre. Firearms were discharged there to deter the
neighbors from coming about. The structure was out in
the country where such inclosures are unusual, and, as
shown by the evidence, unnecessary. The man in charge
of the factory was the lawyer Trent, who lived at the
county seat, and knew nothing of the manufacture of lamp
black. There were only two other persons employed—one,
the day man, was a boy sixteen years old; the other, the

night man, somewhat older, but both entirely ignorant of the manufacture of lamp black. During the five months the factory was operated they manufactured about 300 pounds of lamp black, worth four cents a pound. In this time they burned all the gas they could obtain, the total amount being about 90,000,000 of feet. No lamp black was shipped away from the factory. The gas was burned night and day, and it is evident from the proof that in a short time more the pressure upon the pipes of the Kentucky Heating Company would have been so low as to destroy its usefulness. Other facts might be stated, but the testimony of the defendants themselves, whose depositions were taken by the plaintiff, is sufficient to show that they conceived the idea of securing leases on territory connected with the gas reservoir from which the Kentucky Heating Company obtained its supply, and by boring numerous wells to draw off the gas, and practically destroy the business of the Kentucky Heating Company. The organization of the Calor Oil & Gas Company and the establishment of the lamp black factory was a part of the plan to evade the statute against the wasting of natural gas and to waste the gas.

It is earnestly maintained that the statute does not apply to the case, and that at common law there is no remedy. We can not concur in this conclusion. Independently of the statute, the common law affords an ample remedy for a wrong like this. While natural gas is not subject to absolute ownership, the owner of the soil must, in dealing with it, use his own property with due regard to the rights of his neighbor. He can not be allowed deliberately to waste the supply for the purpose of injuring his neighbor. While a bad motive will not

render that unlawful which is lawful (Chambers v. Bald-
win, 91 Ky., 121, 12 R., 699, 15 S. W., 57, 11 L. R. A., 545,
34 Am. St. Rep., 165), a man is only allowed to make a
reasonable use of those natural supplies which are for
the common benefit of all.    The gas under the ground may
go wherever it will, but the defendants can not be allowed
to draw off the gas from under the plaintiff's lands simply
for the purpose of injuring it, for the plaintiff's lands are
thus clandestinely sapped, and their value impaired.    These
principles have often been applied in the case of underground
waters, and we see no reason why the same rule should
not apply to natural gas.    Wheatley v. Baugh, 25 Pa., 528,
64 Am. Dec., 721; Haldeman v. Bruckhart, 45 Pa., 514, 84
Am. Dec., 511; Greenleaf v. Francis, 18 Pick., 117; Walker
v. Cronin, 107 Mass., 562; Chesley v. King, 74 Me., 164,
43 Am. Rep., 569; Bassett v. Salisbury Co., 43 N. H., 569,
82 Am. Dec., 179; Swett v. Cutts, 50 N. H., 439,
9 Am. Rep., 276. In 21 Am. & Eng. Ency. of Law (2d Ed.),
p. 417, it is said: "Though gas is a mineral, the decisions
governing ordinary minerals apply to it only with many
qualifications, and it is governed by rules analogous to
those governing water percolating beneath the surface.
Water, oil, and still more strongly, gas, may be classed
by themselves, and have been not inaptly termed minerals
ferae naturae." See, also to same effect, 2 Snyder on
Mines, section 1171. The doctrine that an act which is
legal in itself, and violates no legal right, can not be made
actionable on account of the motive which induced it, has
no application, because the acts of the defendants in wast-
ing the gas violated the plaintiff's legal rights.    Both the
parties drew gas from the same reservoir. It was in-
cumbent on each to exercise his right so as not to injure the

other unnecessarily. If one wasted all of the gas from the reservoir, there would be nothing left for the other. Every owner may bore for gas on his own ground, and may make a reasonable use of it; but he may not wantonly injure or destroy the reservoir common to him and his neighbor. This principle has been often applied. Thus each riparian owner may make a reasonable use of a lake or stream of water flowing through his land, but he can not make an unreasonable use of it. Every traveler may make a reasonable use of a highway, but not an unreasonable use to the detriment of another. No one may make an unreasoable use of the atmosphere. In all these instances the party aggrieved by the unreasonable use may maintain an action for redress. In the case before us the plaintiff and the defendant have each the right to take gas from the common source of supply, but neither may by waste, destroy the rights of the other; and, as in the case of other like wrongs, the action for redress may be brought in the name of the real party in interest. Mfg. Gas Co. v. Ind. Gas Co., 155 Ind., 461, 57 N. E.,912, 50 L. R. A., 768; Ohio Oil Co. v. Ind., 177 U. S., 190, 20 Sup. Ct., 576, 44 L. Ed., 729, and cases cited. We therefore conclude that the circuit court properly granted the injunction complained of, and the judgment in that action is affirmed.

W. C. McGehee, who leased the land on which the wells referred to, or part of them, were situated, filed also an action to cancel the lease, on the ground that it was obtained by fraud. McGehee had leased other lands to the Kentucky Heating Company, and was getting $700 per year from the Kentucky Heating Company therefor. He told Trent this when the latter applied for the lease in question, stating that he did not want to do anything that would in-

jure the Kentucky Heating Company. Trent thereupon said to him that the people he represented were lawabiding men, and that they would do a lawful business. The proof warrants the conclusion that the wasting of the gas and the consequent injury to the Kentucky Heating Company was a motive inducing the defendants to get the leases, and this purpose was in view when they obtained the lease. McGehee would not have leased them the land if he had understood the facts. The chancellor canceled the lease on the ground that it was obtained by fraud and that fraud vitiates any contract obtained thereby. The defendants have spent something like $20,000 in putting down their wells, perfecting their rights, and erecting their buildings and other structures. This will be a total loss to them if their lease is canceled. As has been recently held in the case of Commonwealth v. Trent, it is incumbent on them to confine the gas in the wells until such time as it may be utilized, and, if they fail to do this, they become liable to the penalties denounced by the statute. It can not be presumed that the defendants will willfully violate the statute. When McGehee leased them the ground, he intended them to have the benefit of the gas, if they found any, and intended them to use the gas. If, notwithstanding the statute, they should hereafter use the gas unlawfully, he or any other person aggrieved, may maintain an action for the protection of his rights. Under the circumstances, and in view of all the facts, the court concludes that a rescission of the lease should not be decreed.

The judgment in the action of W. C. McGehee against the Calor Oil & Gas Company is reversed, and cause remanded, with directions to dismiss the petition.