## Feldhaus v. Jefferson County.

(Decided June 16, 1936.)

WM. ALPHA HUBBARD for appellant.

LAWRENCE GRAUMAN for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

Mrs. Mary A. Feldhaus is, and has for 12 or 15 years been the owner of a tract of land in Jefferson county on the south side of Fern Valley road which

leads from the Preston street road to the Shepherds-ville road. The tract contains approximately 80 acres and is well improved with a substantial residence, barns, and other farm buildings. Formerly there was a spring on this land somewhere from 100 to 300 feet from the Fern Valley road which, according to the evidence, was fed by a subterranean stream. This was known as the Big Blue Spring, a name applied to it because of its unusual size, clearness and depth. It came up from a funnel-shaped hole 30 or more feet in diameter at the surface, and a ditch had been constructed to carry off the surplus water. Because of the abundant supply of water it afforded prior to 1931, even during the severe drouth of 1930, and the quality of the water, it was widely known. Mrs. Feldhaus' farm and the surrounding land is for some miles very level and underlaid with shale, which dips from the north to the south. In the immediate vicinity of the Feldhaus farm, the soil above the shale was 8 to 9 feet in depth. Because, as is shown by the evidence, the shale is impervious to water, the water could only sink to the surface of the shale. This, coupled with the level surface of the surrounding territory and the very slight dip in the shale, caused the water in the soil to percolate very slowly, if at all, and resulted in all the land in that vicinity being very wet and swampy until relieved of its burden of water by artificial drainage.

In 1931 the county, on petition and request of numerous landowners in the community, dug a drainage ditch over a right of way which it had acquired on the north side of the Fern Valley road. This was a continuation of a ditch the county had dug a year or so previous, the work on which, according to the evidence, had been abandoned because of the large amount of percolating water which flowed into it at the time.

In October, 1933, Mrs. Feldhaus instituted this action against Jefferson county, alleging in substance in her petition that the county, with gross carelessness and negligence in digging the ditch, cut into and through the vein of water flowing into her spring and set off heavy blasts in the ground, rock, and shale underlying the surface adjacent to her property, thereby causing the spring to dry up and the water to be discharged into the drainage ditch, entirely destroying her

spring, to her injury and damage in the sum of $10,-000, for which sum she prayed judgment.

The county interposed a general demurrer to the petition, which was overruled, and it thereupon filed answer, consisting of a general denial of the allegations of the petition and certain affirmative defenses which, because of the conclusion reached, it will be unnecessary to enumerate.

At the close of the evidence for plaintiff, the court overruled the county's motion for a directed verdict, but at the close of all the evidence sustained such motion, and, from a judgment in conformity with a directed verdict for the county, plaintiff is appealing.

The evidence is indefinite as to when the spring failed; the only direct evidence on that point indicating that it was somewhere from six months to one year after the work on the ditch had been completed. According to appellant's pleading and the evidence, the spring was fed by a subterranean stream, and, as she claims and, as is conclusively shown by the evidence, such stream must have come from under the shale; therefore it is clearly manifest that, if the county did actually cut or interfere with this stream, it must have cut entirely through the shale.

The evidence of witnesses for appellant establishes that the water came from a very great depth; one witness testifying that he fished in this hole some years ago and that his line did not reach the bottom. He thereupon tied on another line and with something like 200 feet failed to find the bottom. However, his evidence indicates that his line might have been carried off by a stream leading away from the spring. There is also evidence that Mrs. Feldhaus' son or some other party screwed joints of pipe together in an attempt to ascertain the depth of the spring, but failed to do so. No witness for appellant testified positively that the shale was entirely penetrated. Appellant introduced as a witness a geologist who made some observations and soundings. He testified that the ditch was cut entirely through the shale, but his evidence later developed that this statement was not based on his observations or examination to determine that matter, but alone on the theory that limestone rock had been thrown out of the ditch, and that there was no

limestone above the shale, but all such formations were underneath it. He testified that the shale at this place was about 8 feet thick. A geologist introduced by appellee testified that from his examination of the outcroppings, and from his general knowledge of shale formation, the shale at this place was over 30 feet in thickness. Some of the witnesses testified that water was bubbling up at the bottom of the ditch on the north side and opposite, the Big Blue Spring. Others testified that they observed no such condition. Mr. Drane, the county engineer, who was in charge of the work, testified positively that there was no blasting in the shale, but that the blasting was done to remove mud and boulders above the shale, and that the boulders were so large it was necessary to split them in order that they might be picked up with the digging machinery and lifted out of the trench. In doing this work they made adobe shots with half a stick of dynamite or less; that this was the approved and regular way of doing such work. In making the adobe shots, the stick of dynamite is placed on top of the boulder or rock to be split and covered over with mud; that the only shale removed was rotten and soft shale at the top that could be picked up with the bucket of the digging machine, and this was only to a depth of 8 or 10 inches, and then they would strike hard shale that could not be removed with the machinery. Other witnesses who were employed on the job continually testified to the same effect.

Accepting the statements of the geologist introduced by appellant that the shale was 8 feet in depth and that this was overlaid with 8 or 9 feet of soil, it will be seen that it was 16 feet or more to the bottom of the shale, and no witness stated that the ditch at any point was dug to that depth. While there is no evidence as to the actual measurement of the ditch, the witnesses in the main say that the ditch was 8 or 9 feet deep. There is some conflict in evidence as to whether the spring is actually dry, although the evidence shows that the water in the hole stands some feet below the outflow ditch and one witness who made observations with instruments testified that the water in the spring is on a level with the water standing in the drainage ditch and in post holes dug for the purpose of making a test. This would indicate that the

spring was fed by percolating water rather than by a well-defined stream.

In Nourse v. Andrews, Mayor, et al., 200 Ky. 467, 255 S. W. 84, 86, this court made a distinction between subterranean percolations and subterranean streams, and follows a line of cases from other jurisdictions holding that "percolating waters are parts of the earth itself, as much as the soil and stones, with the same absolute right of use and appropriation by the owner of the land." See, also, United Carbon Company v. Campbellsville Gas Co., 230 Ky. 275, 18 S. W. (2d) 1110. However this is not so material, since appellant based her right of recovery on the claim that her spring was fed by a subterranean stream which appellee cut and thus stopped the flow to the spring. Since it is conceded that, if the spring was fed by a subterranean stream, such stream was under the shale, it will be found from an analysis of the evidence that there is nothing of substantial or tangible nature on which to base a conclusion that appellee cut or in any way interfered with it. On the one hand, the evidence consists of surmise, speculation, and conjecture, and on the other it is positive and direct that all the blasting was done above the shale, and that none was done in the shale, and that only a few inches of rotten shale at the top was removed. It is a rule of universal application in this jurisdiction that a jury should not be permitted or required to indulge in conjecture or speculation, but in such circumstances the court should determine the questions as a matter of law. Stacy v. Williams, 253 Ky. 353, 69 S. W. (2d) 697; City of Ludlow v. Albers, 253 Ky. 525, 69 S. W. (2d) 1051; Small's Adm'r v. Peters, 233 Ky. 576, 579, 26 S. W. (2d) 491.

While appellee's argument that the provisions of section 242 of the Constitution would not in any event have application is persuasive, the conclusions we have reached render it unnecessary to determine that question.

Judgment affirmed.