PETROLEUM EXPLORATION COR-
PORATION, Appellant,

v.

Ernest L. HENSLEY, Appellee.

Court of Appeals of Kentucky.

Dec. 9, 1955.

Allen Prewitt, Edward C. O'Rear, Frankfort, Roy W. House, Manchester, for appellant.

Logan E. Patterson, Patterson & Wilson, Pineville, for appellee.

SIMS, Judge.

Appellee, Ernest L. Hensley, recovered judgment against appellant, Petroleum Exploration Corporation, of $3,810.40 for his interest in gas produced from a well the company drilled on 111 acres of land in Clay County in which he owned an undivided $\frac{1}{12}$ interest at the time the well was drilled. Appellee subsequently acquired an additional $\frac{9}{12}$ undivided interest in the land. There are but two questions involved on the company's appeal: 1. The measure of appellee's damage; 2. the amount of gas the well produced.

On March 3, 1941, the company took an oil and gas lease from the widow and ten children of Frank Hensley, who had died intestate. The lease called for 335 acres but in fact it covered only 111 acres. The company had an abstract made of the title by a competent attorney wherein there is the affidavit of Irvine Hensley, a relative of the lessors, stating the widow and the ten children named in the lease as grantors were the only heirs-at-law of Frank. Also, the widow verified the petition asking the circuit court to approve the lease of the infant heirs and that pleading stated Frank was survived by ten children. It is manifest the company took full precautions to see that it obtained a good title under its lease before drilling on the property.

It completed a gas well on the lease in June 1942, and production was started October 31, 1942. The lease contract provided for a flat gas royalty of $150 per year for each well from which gas is marketed. Only one well seems to have been drilled on the property. The lease contains a warranty of title by the lessors and provides if the lessors own less than the entire interest in the land, they shall only receive such part of the royalty as their interest entitles them. Also, the lease contains a provision that the interest of either party may be assigned, in which event the

covenants of the instrument shall extend to the assignee.

From the record it appears Frank previously had been married and left surviving him two children by his first marriage, who resided in Ohio. Appellee and his sister were the two children by the first marriage. Soon after the well was drilled, appellee received notice of it and refused to join in the lease. Subsequently, appellee purchased the interest of his sister in the land, also the interests of five of his half-brothers and sisters and thereby became the owner of an undivided $7/12$ interest. But the record does not show when he acquired these various interests in the land. On November 1, 1952, he instituted suit against the company averring it owed him $224,090.30 for his interest in the gas it took from the well from October 31, 1942, until the day his suit was filed on November 1, 1952.

The company's answer was a general denial and a plea of the five year statute of limitations, which plea was sustained by the court and no issue is raised as to the correctness of that ruling. By way of counter-claim the company pleaded it had no notice or information concerning plaintiff's claim until August 10, 1950, and that his recovery should be limited to his proportion of the royalty of $150 per year for the five years immediately preceding this action. In its cross-petition the company pleaded the lessors warranted the title and called upon them to defend the action and asked judgment against them for any amount plaintiff recovered of it. Appellee filed an amended petition in which he asked recovery for his proportionate share of the net value of the gas produced and averred the reasonable cost of production was one cent per thousand cubic feet.

The cause was transferred to equity and it was stipulated Frank's widow died January 14, 1946; that appellee had acquired $6/12$ interest in the land in addition to the $1/12$ he inherited, making him the owner of an undivided $7/12$ interest therein. The company pleaded it had paid the ten lessors $602 delay rental before drilling and

$1,500 in cash for the royalty reserved in the lease. In addition to asking for judgment against the lessors for any sum recovered against it, the company asked authority to deduct from the future gas rental, or royalty, due the cross-defendants until such judgment is satisfied.

It is apparent appellee and the company were co-tenants in this land, therefore the company was not a trespasser as it had the right to drill on the commonly owned property without the consent of appellee. Hence, the company is only liable to appellee for the net value of his share of the gas it appropriated. Taylor v. Bradford, Ky., 244 S.W.2d 482, and the many authorities there cited and discussed. Thus, we are confronted with what is "the net value" of appellee's gas which the company appropriated?

Theoretically, such value is the market price of the gas at the mouth of the well less the cost of producing it. Many elements enter into the cost of production, such as, cost of drilling, equipping and operating the well, repairs and replacement of equipment, taxes and overhead expenses. Swiss Oil Corporation v. Hupp., 253 Ky. 552, 69 S.W.2d 1037, at page 1045.

The record shows the company had no meter on the well because the royalty was a flat sum of $150 per year. Appellee knew this and made no request to have one installed. He introduced Samuel L. Bell, who is not a geologist but who has had considerable experience in drilling wells and producing gas in Ohio, although he has not operated in Kentucky. Bell testified there was no mathematical formula known to him by which one can determine with accuracy how much gas has passed from a well. He was not familiar with the method of determining gas production by the acre based on the rock pressure and the porosity of the sand, yet he estimated this well produced per day in 1945, 1946 and 1947, six hundred thousand cubic feet of gas; for 1948, 1949 and 1950, five hundred thousand cubic feet; for

1951 and 1952, four hundred thousand cubic feet and for 1953 and 1954, three hundred thousand cubic feet. It might be well to here state appellee amended his petition to recover for gas produced after his suit was filed in 1952. Bell's estimate was based upon his experience "measured against known factors of this well." He further testified the cost of production would not exceed one cent per thousand cubic feet. It is patent Bell's testimony has but little probative value.

Paul E. Landrus, superintendent of gas operation for appellant company, testified the customary price of gas at the mouth of the well is 12 cents. He further testified it cost 10 cents to produce the gas and the net value of it at the mouth of the well is 2 cents per thousand cubic feet. According to Mr. Landrus there are two methods, or formulas, used to calculate the gas a well has produced; one is known as the Boyles Law and the other as the Charles Law, both of which are based on the rock pressure and porosity of the sand and the depth of the well. He testified this well from 1947 until 1954 produced one hundred thirty-five million, one hundred thousand cubic feet of gas. In reality Mr. Landrus' testimony is an estimate, but it seems to be based upon a scientific law or formula.

■ Mr. Landrus bases his figures on the theory that this well draws gas from 160 acres rather than 111 acres covered by the lease, and the production of the well should be cut down proportionately. We are not in accord with this theory, as the lessors and lessees are entitled to the production made by this well regardless of where the gas comes from. 24 Am.Jur. "Gas and Oil" § 5, p. 522; United Carbon Co. v. Campbellsville Gas Co., 230 Ky. 275, 18 S.W.2d 1110.

In Hughett v. Caldwell County, 313 Ky. 85, 230 S.W.2d 92, on pages 96 and 97, 21 A.L.R.2d 373, it was said of that opinion the measure of damage in this character of case varies according to the facts of different situations, and courts attempt

to make the injured party whole—" 'one party is not chargeable with more and the other is not entitled to less.' "—and in some instances the net value of the mineral taken might appropriately be determined on a royalty basis. A full discussion of the measure of damages where one appropriates the minerals from the land of another appears in the Hughett opinion and we deem it unnecessary to further discuss the question here.

■ Under the peculiar facts in this record we think justice will be served better by putting appellee's recovery upon a royalty basis rather than attempt to arrive at the highly speculative amount of gas the well produced in 1947 and successive years, less the cost of production. We fix appellee's damages at $\frac{7}{12}$ of the net value of the gas at the mouth of the well. This is especially true as "the net value" basis would not be too accurate at best.

The royalty was $150 a year and beginning with 1947 the company should pay appellee $\frac{1}{6}$ of $150 for 1947 and each successive year it continues to produce gas from this well. And it should pay him an additional $\frac{5}{12}$ of such royalty sum from 1947 on, provided he conformed to the provision of the original lease in notifying the company that $\frac{5}{12}$ of the royalty had been assigned to him.

■ It necessarily follows the company is entitled to judgment against the grantors of its lease for $\frac{5}{12}$ of the sum it must pay appellee under the original lease. As appellee purchased $\frac{5}{12}$ interest from the other children of his father after the covenant of warranty in the lease was broken, he is not liable to the company on the lessors' breach of covenant. A purchaser is never liable on a covenant which was wholly broken before he made his purchase. Eli v. Trent, 195 Ky. 26, 241 S.W. 324; 32 Am.Jur. "Landlord and Tenant" § 97, p. 104.

■ Appellee argues in brief we should not reverse a trial judge under CR 52.01

on findings of fact unless they are clearly erroneous. So we should not, but here his findings of fact are clearly erroneous and we are constrained to reverse the judgment with directions that one be entered consistent with this opinion.