Sam HOLLINS et al., Appellants,

v.

J. J. WHITE et al., Appellees.

Court of Appeals of Kentucky.

Feb. 17, 1956.

Hensley & Logan, Fred B. Redwine, Louisville, for appellant.

J. Granville Clark, Russellville, for appellee.

MONTGOMERY, Judge.

Appellees, by this action, sought to quiet their title, recover damages for trespass, and enjoin appellants from further trespasses on 1.34 acres of land. Appellants claimed title, and in the alternative, sought damages in the sum of $13,000 for improvements erected upon the land. The judgment held that the 1.34 acres were included in a tract of land owned by appellees. Appellants were enjoined from trespassing and were awarded $2,100 for the improvements erected upon the land by them. On appeal, the only question involved is the title to the 1.34 acres.

The United Society of Shakers owned a large boundary of land situated in the adjoining corners of three counties: Logan, Simpson, and Warren. The Louisville & Nashville Railroad Company was constructing a line through part of this land. On August 7, 1860, the Society, through its trustees, conveyed 1.34 acres to the railroad company. This deed contained a covenant of general warranty of title and the following:

"Provided the Same Shall only be used for Depot purposes and for a dwelling for the agent of the grantors."

No depot or dwelling was ever built on the 1.34 acres by the railroad company. By a quit claim deed dated October 22, 1944, the railroad company relinquished all its interest in this land to the appellants. About 1920, the Society conveyed part of its land to Bland and Day, who in turn transferred their rights to Bond Brothers. Bond Brothers divided the boundary of land and sold it in small farms. On February 25, 1924, Bond Brothers conveyed tract Number 37 to appellees. This land was described as follows:

"A portion of what is commonly known as the Shaker Property, and consisting of about 77⁷⁹⁄₁₀₀ acres, being tract No. 37, which is fully described by metes and bounds upon the plat of said Shaker Property filed of record in Deed Book 107 at page 428 and 429 in the office of the Clerk of the Logan County Court and in Deed Book 44, pages 606 and 607 in the office of the Clerk of the Simpson County Court. Reference is made to said plat for an exact description of said property."

Appellees contend that the deed from Bond Brothers conveying tract Number 37, as shown on the plat of the Shaker property, included the 1.34 acres and that upon the failure of the railroad to use it for the purposes provided, title reverted to the original grantor, or its successor in title, namely appellees. They also claimed title by adverse possession.

Appellants contend that the 1.34 acres as conveyed to them by quit claim deed, and as indicated on the plat, were specifically excepted and excluded from tract Number 37 conveyed to appellees and were no part of the real estate conveyed by Bond Brothers to appellees.

■ It is conceded that the deed from the Shakers to the railroad company conveyed only an easement to use the 1.34 acres for stated purposes, and upon the failure of the railroad company to use same for those purposes, the title thereto reverted to the grantor, or its successor in title. Mammoth Cave National Park Association v. State Highway Commission, 261 Ky. 769, 88 S.W.2d 931; Sherman v. Petroleum Exploration, 280 Ky. 105, 132 S.W.2d 768, 132 A.L.R. 137; Rose v. Bryant, Ky., 251 S.W. 2d 860; Austin v. Calvert, Ky., 262 S.W. 2d 825. Both parties claimed title from a common source, the Shakers.

■ It is also agreed that this is an action to quiet title wherein the defendants, now appellants, also assert title, and that the question of title should be determined without regard to possession by the plaintiffs, appellees here. Justice v. Staton, 291 Ky. 179, 163 S.W.2d 471.

The Chancellor found that the disputed lot was included in the tract conveyed to appellees and thus reverted to them. A review of the testimony is necessary to consider his ruling.

The plat referred to in appellees' deed had been prepared by one John L. Bush, a local surveyor, and had been recorded in each of the three counties for the preparation of the sale of the Shaker land as divided into tracts. The depot property was indicated on the plat by a small rectangle. The surveyor said that when he prepared the plat he remembered that the railroad company had property there. Not having a metes and bounds description of the railroad property, it was shown as a small block located within tract Number 37, and in its extreme northeast corner. He testified that the boundary lines of tract Number 37 included the depot lot, although there were 77.72 acres of land inside tract Number 37, excluding the lot. The boundary lines, including the lot, were surveyed from one known and well-established object or landmark to another in accordance with the distances and courses called for by the description of tract Number 37.

There was other conflicting evidence as to whether the disputed lot was included in the tract conveyed to appellees. They had exercised control over a greater portion of the lot and had fenced and farmed part of it since 1924. Prior to the purchase of tract Number 37, O. S. Bond, of Bond Brothers, had pointed out the lines and courses of the tract to appellee White and explained that in his opinion the tract did not include the lot. However, he said appellees bought and were "deeded" whatever Bond Brothers bought from the Shakers. Part of the lot was then enclosed by a fence as a part of tract Number 37. Appellant Hollins approached appellee White about buying the lot. White testified that, "I told him I would not sell it, I thought the railroad company claimed it, and I would not sell it. I did not know who it belonged to." Hollins said that White told him he would have to buy it from the railroad company.

Appellants then approached the railroad company about selling the lot. The attorney for the railroad company advised appellant Hollins that the company did not have good title. Hollins was offered the property by quit claim deed in return for $25, or by general warranty deed for $250. They discussed the condition of the title and the proceedings necessary to clear the title to the lot. Appellants elected to take

the quit claim deed. Hollins then tried to obtain a quit claim deed from White but was refused. He was advised by an attorney to have the title abstracted, but declined to have it done.

Shortly after receiving the quit claim deed, appellants started the construction of a warehouse for cleaning and storing seed. The evidence is conflicting as to how far the construction had progressed before White had a notice served on appellants that they were erecting a building upon his land at their risk. The notice was served on July 26, 1945, by the sheriff. The building was completed and additions were made later. Appellees lived near by and had opportunity to observe what appellants were doing. Suit was filed August 24, 1945.

This action was filed while the Civil Code of Practice was in effect. Judgment was rendered after the Civil Rules became effective. No order has been found continuing the practice of the case under the Code; therefore, the judgment will be considered in accordance with the Civil Rules. CR 86.

The finding of the Chancellor that the disputed lot was included in tract Number 37 conveyed to appellees is amply supported by proof of substantive character. Unless such a finding of fact is clearly erroneous, it should be upheld. CR 52.01. Petroleum Exploration Corporation v. Hensley, Ky., 284 S.W.2d 828. The Chancellor's finding on this issue is sustained. Denham v. Denham, Ky., 285 S.W.2d 176.

Since the Chancellor concluded that the 1.34 acres were included in tract Number 37, they reverted to appellees as the successor in title of the original grantor, and appellees hold title under their conveyance from Bond Brothers. It is unnecessary to consider the question of title by adverse possession.

The judgment is affirmed.